### Charles H. Slate v. Hogback Mountain Ski Lift, Inc.

[163 A.2d 851]

May Term, 1960

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed September 6, 1960

*A. Luke Crispe* and *James L. Oakes* for the plaintiff.

*Fitts & Olson* for the defendant.

**Hulburd, C. J.**   The defendant, as its name indicates, is a ski lift operator.   Its development lies along Route 9 between Brattleboro and Bennington.   On the morning of January 29, 1958, the defendant's employee, Brittain, was busy removing the snow, which had fallen during the night before, from the defendant's parking area.   For this purpose he was using a motor truck called a Dodge power wagon which, with the snow plow attached, was twenty feet in length.   Brittain had plowed long enough to accumulate three large piles of snow which he had deposited along the westerly (generally southerly) shoulder of the highway.   In order to push this snow further back from the highway Brittain had maneuvered his truck so that it was across the highway, and at right angles to it, opposite the piles of snow. The road at this point was twenty feet wide exclusive of the shoulders.

At the critical time here in issue, the rear of Brittain's truck reached out over the easterly (generally northerly) gravelled edge of the highway, while the front end, with its plow, projected into the left lane of travel of one approaching the point from Brattleboro.   The evidence is such as to permit a jury to find that for one so approaching, not only was the right lane completely blocked by the truck but there was not enough clearance between the front of the truck and the piles of snow to permit a car to pass to the left of it in the left lane.   As the truck stood, crossways of the road, the position into which Brittain had maneuvered was so tight that to extricate himself would require at least "two moves" to get the truck "headed" with the road.

It was with the defendant's truck situated as we have described it that the plaintiff came on the scene while proceeding from Brattleboro to Bennington.   The plaintiff was driving a truck weighing, as loaded, about eight tons.   He was traveling at a speed of from twenty to twenty-five miles an hour.   It was down-grade, and the road curved just before the plaintiff reached where the defendant was plowing. For this reason the plaintiff was not able to see the power wagon

until he reached a point about two hundred to two hundred thirty feet away. Upon coming into view and seeing the way ahead blocked, the plaintiff started blowing his horn and applying his brakes. He went on to testify, "I didn't want to go into the ditch, I certainly didn't want to hit him broadside. While I was applying my brakes I was sliding. I saw he was blocking my way so I slammed the brake on. I cut the wheels and came across the road and hit approximately where the mail box was." What he hit was not the snow plow but "quite a tall snow bank" which covered "a mound of loam" located about thirty feet from the defendant's truck. In the collision, the plaintiff felt pain "snap in his back." This evidently signalled a back injury attributable to the twist and wrench received upon ramming into the pile as stated and is the basis of the plaintiff's claim.

The plaintiff testified that prior to the accident he had slammed on his brakes to test the road conditions when going over the top of the mountain. He saw that the road was slippery and so he "shifted down." As he approached the scene of the accident he was not warned by any sign or otherwise of the danger which lay ahead. As the plaintiff put it—"When I came over the hill, I was confronted with this object in the middle of the road. I put my brakes on and cramped my wheels. When I cramped my wheels I went into a slide. The slide is what prevented me from stopping." Following the accident, the defendant's employee complimented the plaintiff on the way he had avoided hitting him and told him "he had done an exceptionally good job in stopping his truck."

■ With the evidence standing as we have stated, the jury returned a verdict in favor of the plaintiff. The defendant claims error. He argues, first, that the plaintiff was guilty of contributory negligence as a matter of law because, he says, the plaintiff was operating his vehicle at a speed greater than that which would enable him to stop within the distance he could see ahead. He points out that we have applied this rule in a variety of cases: within the range of headlights when operating in the dark, *Steele* v. *Fuller,* 104 Vt. 303, 309, 158 A. 666; when visibility was obscured by smoke, *Palmer* v. *Marceille,* 106 Vt. 500, 507, 175 A. 31 ; or by fog, *Powers* v. *Lackey,* 109 Vt. 505, 507, 1 A.2d 693. However, we have always made it clear that the rule is not one of invariable application. *Welch* v. *Stowell,* 121 Vt.

381, 159 A.2d 75, 77. In *Chaffee* v. *Duclos,* 105 Vt. 384, 386, 166 A.2d, we quoted with approval from *Kaufman* v. *Hegman Transfer & Lighterage Terminal,* 100 Conn. 114, 118, 123 A. 16, 17, that if one were required to be able to stop within the distance he can see ahead at all times, it "would force the traveler to assume that the highway was liable to be obstructed, and, in view of this to so travel that he should not collide with any obstruction in the highway however negligently it may have been maintained upon it. It would thus impose upon the traveler the exercise of extraordinary care instead of ordinary care in the circumstances." The case before us presents just such an obstruction. The circumstances of the accident itself demonstrate the fallibility of the "assured clear-distance-ahead doctrine" obtaining in some jurisdictions. We think that in the circumstances of this case it was sufficient if the plaintiff was operating at such speed and under such control that he would have been able to stop had he been given that warning of the approaching danger as would normally be given by one, who, in the exercise of due care, was deliberately carrying on an activity which would tend to block the highway for a considerable space of time.

We decline to hold that the plaintiff was guilty of contributory negligence as a matter of law as contended by the defendant. It was for the jury to say under the circumstances of this case, aided as they were by a view of the scene of the accident, whether the plaintiff failed to operate with reasonable prudence, and it was proper for them, if they saw fit, to relieve the plaintiff of the general requirement that an operator should be able to stop in time to avoid collision with an object in the range of his vision. *Welch* v. *Stowell,* 121 Vt. 381, 159 A.2d 75, 77. Compare, *Francis* v. *Henry,* 399 Pa. 369, 160 A.2d 455, 460.

Defendant's second assignment of error is closely related to the one just considered. It pertains to the sudden emergency doctrine about which the trial court instructed the jury. The defendant claims that the plaintiff was not entitled to any benefit under the doctrine because he operating his vehicle at a speed which did not permit him to stop within the distance he could see ahead. Since this exception is based on an assumption as to the law which we have already rejected, it is unnecessary to deal further with the defendant's argument in this respect.

12

Concerning the matter of sudden emergency, the defendant has also briefed exceptions to the court's failure to instruct the jury in accordance with his requests as follows:

"30. The so-called sudden emergency doctrine which I have defined is not applicable in any event unless you find that a perilous situation in fact existed.

"31. Thus, if you find that the eastbound lane was not blocked by defendant's vehicle or by piles of snow, and the plaintiff mistakenly thought it was, because he did not use his sense of sight to see what was plainly observable, then the plaintiff cannot claim the benefit of the sudden emergency doctrine.

"32. The burden of proving the existence of a sudden emergency is upon the plaintiff."

As to request No. 30 it is enough to say that under our rule the question is not whether a perilous situation in fact existed, but rather whether "it would have appeared to an ordinary prudent person," situated as the plaintiff was, that a perilous situation existed. *State* v. *Graves,* 119 Vt. 205, 214, 122 A.2d 840. After the crisis is over, to be sure, one might ascertain by taking a calm measurement that there was just enough room for a car to have passed to the left of a vehicle situated as the defendant's was. It is not to be expected, however, that the anxious eye of a motor vehicle operator suddenly confronted with peril should have all the accuracy of a tape measure. It is enough if the plaintiff's appraisal of the situation was such as an ordinary prudent person would have made in the same circumstances. Negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent person. *Menard* v. *Blanchard,* 117 Vt. 384, 389, 92 A.2d 616.

What we have said disposes of Request No. 31 as well as No. 30. Concerning Request No. 32 as to the burden of proving the existence of a sudden emergency, we think that this was taken care of at the very outset of the court's instructions. The Court made it clear to the jury that the burden of proof was on the plaintiff to show that he, himself, was free from contributory negligence. This burden remained on the plaintiff, under the law prevailing at that time, in his attempt in this regard in whatever way he sought to establish this fact. The

defendant's request merely called for a reiteration of something which had already been said. No error appears in this regard.

The defendant excepted to the instructions of the trial judge to the jury that the defendant had a duty not to turn or back his vehicle in the public highway without taking due care to avoid injury to other users of the highway. The defendant asserts that "There was no evidence that the defendant's vehicle had been backed or turned upon the public highway at any time which would be material to this action." The transcript does not justify this statement. One cannot say, merely because the defendant's snowplow was not moving when the plaintiff came into view, that the maneuvers which preceded the plaintiff's arrival are immaterial. The defendant's truck didn't just happen to be across the road. It was backed there. It had to be backed there because if it took two moves to get out of the position it was situated in, it must have taken two to get into it, and one of them would involve backing, and the inference is inescapable that it occurred just prior to the accident.

Defendant's next exceptions concern requests to charge (Nos. 6, 13, and 14) relative to being able to stop within the range of vision. These requests were based on an erroneous assumption as to the law on that subject, and what we have said earlier in the opinion makes it unnecessary to consider them further. They were properly refused.

■ The defendant excepted to the court's failure to charge in accordance with request No. 27. This request, in turn, refers to, and is based on, some other request which has not been put before us. For this reason it cannot be given consideration.

Finally, the defendant complains that he was not permitted to ask the plaintiff two questions on cross-examination as follows:

"Then you were not operating your motor vehicle at a speed no greater than that which would enable you to stop in time to avoid an obstruction within the range of your vision and which you saw."

"So you couldn't stop within the range of your vision of objects in the road."

These questions are manifestly objectionable, being argumentative in form and calling for a conclusion. Just previous to asking these questions defendant's counsel was allowed to bring out on cross-ex-

amination of the same witness "You couldn't stop between the time you saw Mr. Brittain's truck and the time you got to the mail box?" (The mail box marked the snow bank which the plaintiff ran into.) To this the plaintiff answered "No." As was said in *Holton Estate v. Ellis,* 114 Vt. 471, 481, 49 A.2d 210: "The previous answers of the witness so nearly covered the same ground, that we perceive no abuse of discretion in the exclusion of this question." No prejudicial error appears.

We have found nothing in the record that convinces us that the verdict for the plaintiff in this case rests on error. No exception is sustained.

*Judgment affirmed.*