**William J. KENT, III, Plaintiff-Appellee,**

v.

**Albert C. SMITH, Defendant-Appellant.**

**No. 175, Docket 32619.**

United States Court of Appeals
Second Circuit.

Submitted Nov. 13, 1968.

Decided Dec. 11, 1968.

Wick, Dinse & Allen, Burlington, Vt., for plaintiff-appellee.

Coffrin & Pierson, Burlington, Vt., for defendant-appellant.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

MEDINA, Circuit Judge:

We are urged to reverse this judgment for plaintiff because it is claimed that plaintiff was guilty of contributory negligence as matter of law, and that it was error to refuse certain of defendant's requests for instructions. It is also claimed that it was error to receive plaintiff's testimony concerning his loss of earnings while disabled after the automobile accident that gave rise to the case.

On Sunday, March 6, 1966 in the late afternoon there was the usual exodus of those from New York City and elsewhere who came with their skis to enjoy

the Vermont slopes and the fresh air and sunshine. The weather was clear and the roads dry. Route 100 was a Throughway, as defined by Vermont law, and it ran due North and South from the Town of Stowe, where the skiers congregated. The traffic going South was fairly heavy as was to be expected; and there were few cars in the North-bound lane.

Kent was driving his father's car, a 1966 Ford Mustang, along Route 100 on his way South to his home in Brooklyn, New York. Just in front of him was a blue Corvair travelling at the rate of from 30 to 35 miles an hour and for several miles after leaving Stowe Kent had been on the lookout for an opportunity to pass the Corvair and get on his way. And so Kent, following the Corvair closely, proceeded along the Throughway, which was a straight highway with dips and rises. As Kent came up one of these rises or small hills the distance from the top of the hill to a smaller intersecting road leading to the Town of Moscow was only 259 feet, according to the testimony of the police officer who investigated the accident. Kent was unfamiliar with the neighborhood as he had driven on Route 100 a very few times. He had never noticed the smaller road to Moscow, and, if there was a small, black and yellow direction sign on Kent's right about 300 yards from the Moscow road, as testified by defendant Smith, Kent said he did not see it. Coming up the rise there were two solid lines in the center of Route 100. At the top of the rise the line on Kent's side became a broken line while the other line continued on as a solid unbroken line. So, as Kent was "right on top" of the Corvair, a matter of 10 yards or so, he noticed the broken line, saw a clear road ahead for a distance of about a quarter of a mile, and he accelerated his speed to about 40 miles an hour and started to pass the Corvair. As he got abreast of the Corvair, the hood of Smith's Cadillac suddenly appeared in the North-bound lane where Kent then was and the collision was inevitable. The Corvair was was alongside, there was a ditch on Kent's left and no place to go. The Corvair swerved to the right, partly on the Moscow road and managed to get around and past the Cadillac.

There was the usual conflict in the testimony. Smith's version was that he came to a full stop on Moscow Road, waited for 2 or 3 minutes for a chance to cross the South-bound traffic on Route 100, saw the top of the Corvair as it was approaching the top of the hill, "knew he had time to cross," and, at 15 miles per hour, he had completely made the turn into the North-bound lane on Route 100 when he saw Kent bearing down on him a mere 25 or 30 feet away.

While there is no doubt that the Corvair could be seen as Smith actually saw it, the question of the alleged contributory negligence of Kent depends upon a variety of factors which make this a question for the jury, in our judgment. It is far from clear just where on Moscow Road the Cadillac was when it came to a stop waiting for the South-bound traffic to clear. There was an intervening house and a driveway. Kent, a comparative stranger in the vicinity, said he did not know there was an intersecting road ahead and he saw no direction sign such as was described by Smith. Only the jury, weighing the credibility of the witnesses and all the attendant circumstances, could decide what were the relative positions of the cars and the visibility of the respective drivers in that short but vital period of time before the collision.

Of critical importance is the testimony of the investigating police officer to the effect that: "Coming from the North after you pass the rise, it is even then difficult to know that the intersection is ahead on the right."

The two Vermont statutes relied upon by appellant Smith are:

Section 1034, Tit. 23, Vt.Stat.Ann.:

All intersecting highways shall be approached and entered slowly and with due care to avoid accident.

And Section 1037, Tit. 23, Vt.Stat. Ann.:

A vehicle shall not pass another from the rear at the top of a hill or on a curve where the view ahead is in anywise obstructed, or while the vehicle ahead is crossing an intersecting highway or is about to turn into the same.

It would be absurd, we think, to construe these statutes to mean that, wholly apart from the attendant circumstances, the driver of a car must at his peril know, when he is approaching or when the vehicle ahead is crossing an intersecting highway. As we read the Vermont cases, violation of the letter of these statutes does not establish negligence as matter of law. Smith v. Blow & Cote, Inc., 124 Vt. 64, 196 A.2d 489 (1963); Slate v. Hogback Mountain Ski Lift, Inc., 122 Vt. 8, 163 A.2d 851 (1960); Welch v. Stowell, 121 Vt. 381, 159 A.2d 75 (1960).

The instructions of the trial judge on this subject were, in our opinion, comprehensive and quite accurate in every way. After a general statement that negligence is the failure to do "what a reasonably careful and prudent driver would have done under like circumstances," the trial judge specifically covered "the rules of the road" in connection with the question of Kent's alleged contributory negligence. He said:

First, he was also required to use reasonable care in the operation of his motor vehicle to avoid inflicting damage or injuries upon other persons or vehicles on the highway. Also, it was his duty at all times to maintain a lookout for other persons and vehicles on the highway. He is required to look with the degree of care that a careful and prudent person would have exercised in like circumstances. For this reason, it is to be presumed that he saw whatever would have been within his range of vision if he had looked. In other words, it will not avail the Plaintiff to say that he looked and did not see what he could not help but see if he had looked effectively.

In addition, you should keep in mind that all intersecting highways should be approached slowly and with due care to avoid an accident. In considering this factor, however, you should keep in mind that the Plaintiff was using a throughway and was thus entering the intersection from a favored direction. This, however, is not an exclusive right to proceed without adquate observation and regard for vehicles approaching from a disfavored direction.

Another rule of the road which has application in this case is that a motor vehicle shall not pass another from the rear while the vehicle ahead is crossing an intersection. If you find from the evidence that the Corvair which was preceding Mr. Kent was crossing the intersection while Mr. Kent was passing it, then you may take this rule into consideration in determining whether Mr. Kent's conduct measured up to the standard of care required of him.

Finally, if you find from the evidence that the Defendant had completed his turn onto Route 100 and was proceeding in the northbound lane when the Plaintiff pulled into the northbound lane in order to pass the Corvair, you shall consider two additional rules of the road in measuring the conduct of the Plaintiff. First, you must consider the rule that operators of motor vehicles proceeding in opposite directions shall exercise due care and shall each keep to the right of the center of the highway so as to pass without interference, and secondly, that the operator of a vehicle overtaking another vehicle proceeding in the same direction shall not pass to the left of the center of the highway unless the way ahead is clear of approaching traffic.

You are to keep in mind that in measuring the conduct of both the Plaintiff and Defendant, that the violation of any one of these rules of the road alone is not negligence as a matter of law. The propriety of their

conduct depends upon all the surrounding facts and circumstances in the case. Thus, the question of whether the Plaintiff was driving his vehicle in such a manner as to constitute negligence on his part is a question of fact for the jury to determine.

The refusal to grant the following requests to charge is assigned as error:

Request #6: It was the plaintiff's duty to drive slowly enough in passing the car in front so that he could see the road and know that it was clear of approaching traffic.

Request #8: Reasonable control is frequently measured by the ability of the operator to stop his vehicle quickly and easily. When this result is not accomplished, inference is warranted that the vehicle was traveling too fast or that adequate control was not maintained.

The wording of these requests is taken verbatim or in substance from Luce v. Chandler, 109 Vt. 275, 195 A. 246 (1937) and Verchereau v. Jameson, 122 Vt. 189, 167 A.2d 521 (1961).

It would suffice to say that in view of the scope and accuracy of the instructions as given there was no occasion for any elaboration. We think it pertinent to add, however, that it is generally not helpful to take quotations from the opinions of appellate courts, that were never intended to be used as instructions to juries, and submit these in the form of requests to charge. In this particular situation the factual background of the cases from which these quotations are taken bear little relation to the facts and circumstances of this case. Thus, in the common phrase, the instructions are "slanted" and apt to give the jury a wrong impression of the rules of law that govern the resolution of the issues. It is far better for the trial judge to prepare his own instructions tailored to the requirements of the case on trial, as was done in this case by Judge Leddy.

In view of appellant Smith's testimony that he saw the Corvair approaching at a distance of less than 100 yards, we find no error in the instruction relative to the alleged negligence of Smith. We also sustain the rulings relative to Kent's testimony on the subject of his loss of earnings.

Affirmed.