**Gary W. JUSTICE, Appellant,**

v.

**John W. DENNIS, individually and in his official capacity as North Carolina State Highway Patrolman, Appellee.**

**No. 85–1431.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1985.

Decided June 16, 1986.

James J. Wall (Barbara von Euler, Legal Services of Lower Cape Fear, Wilmington, N.C., on brief), for appellant.

Isaac T. Avery, III, Sp. Deputy Atty. Gen., N.C. Dept. of Justice (Lacy H. Thornburg, Atty. Gen., W. Dale Talbert, Asst. Atty. Gen., Raleigh, N.C., on brief), for appellee.

Before HALL and ERVIN, Circuit Judges, and SWYGERT, Senior Circuit Judge of the Seventh Circuit, sitting by designation.

ERVIN, Circuit Judge:

Gary Wayne Justice seeks a new jury trial on his claim that North Carolina State Highway Patrol Trooper John W. Dennis used unconstitutionally excessive force while Justice was detained in the Onslow County Courthouse jail. Although we are not certain that the force exceeded constitutional limits, we believe that the jury was instructed to test Dennis' conduct against a standard overly favorable to the trooper. We therefore reverse and remand for a new trial.

## I.

In the early morning hours of December 19, 1982, Trooper W.B. Rose arrested Justice for driving while impaired. *See* N.C. Gen.Stat. § 20–138.1 (1983). After a breathalyzer test indicated that Justice was legally intoxicated, Rose prepared to take Justice to a magistrate's office in the Onslow County Courthouse. Because Justice was verbally abusive and physically obstreperous, Rose asked the appellee, Dennis, to follow him to the magistrate's office. Dennis complied.

The magistrate found probable cause for Justice's arrest and set bond at $150.00. The troopers then escorted Justice, who planted his feet to resist the move, to the courthouse booking area. As he entered the booking area, which contained several other people, Justice kicked a chair across the room. Dennis and Rose then moved Justice into a small visitors' room off the booking area. The door to that room was not locked.

When Justice attempted to wander out of the visitors' room, the incidents forming the basis for this lawsuit occurred. Justice unsuccessfully kicked at Dennis and Rose and spat on Dennis. In response to the spitting, Dennis pushed Justice toward the corner of the visitors' room, which had cement walls.[1] Justice hit his head on the cement, either through the force of Dennis' push or in an attempt to maneuver away from the wall. Justice then smiled and told Dennis that his teeth had been cracked in the scuffle.[2]

Justice continued to struggle when Dennis and Rose moved him back into the booking area. A city police officer present in the booking area volunteered mace, which Dennis sprayed in Justice's face. At trial, Dennis admitted that he used the mace "on instinct pretty much. Because it was handed to me. If it had not been handed to me, I could have, of course, still probably subdued ... controlled Gary Wayne without it." After the macing, Justice's wait for bail to be posted passed without incident.

Justice sued Dennis under the Civil Rights Act, 42 U.S.C. § 1983 (1982), alleging that the pushing, teeth cracking, and macing violated his due process rights under the fourteenth amendment. After three days of testimony, the court gave the jury the following instruction, among others.

> Members of the jury, you are instructed to use the following standard for determining the amount of force necessary to make the defendant liable.

> The force used by the officer is unconstitutionally excessive if the officer used a means so brutal, demeaning and harmful as literally to shock the conscience of a court.

> You must determine whether the force applied caused injury so severe, was so disproportionate to the need presented

---

1. Rose testified that he, not Dennis, pushed Justice back into the visitors' room. However, Dennis testified that Rose's recollection was incorrect. The recollections of Rose and Dennis are also inconsistent on a number of other details. For purposes of this statement of facts, Dennis' recollection has been adopted.

2. Justice's dentist subsequently repaired the cracked teeth. He testified that because of a prior accident, Justice's teeth might have been susceptible to injury at unusually low levels of pressure.

and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal or inhumane abuse of official power literally shocking to the conscience.

The jury returned a verdict for Dennis, which the court refused to overturn on Justice's motion for a judgment notwithstanding the verdict. Justice now appeals, arguing that the instruction set an unconstitutionally high threshold for imposing liability on Dennis.

## II.

■ The instruction was patterned very closely after this court's language in *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980), a section 1983 case involving excessive discipline in a grade school. Verbatim repetition of the language of a previous decision, however, does not guarantee that a jury instruction properly states the standard governing the case at bar. *See Kent v. Smith,* 404 F.2d 241, 244 (2d Cir.1968); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2556, at 658 (1971). This court noted in *Kidd v. O'Neil,* 774 F.2d 1252 (4th Cir.1985), that the terms used in *Hall* and in other, similar cases are merely "descriptives of state agent conduct and are therefore not the substantive tests of deprivation of constitutional right in the different factual contexts to which they refer; they simply describe conduct that would necessarily exceed any privileged use of force in those different contexts." *Id.* at 1261 n. 15. *See also Ladnier v. Murray,* 769 F.2d 195, 199 n. 4 (4th Cir. 1985).

After *Kidd,* it is clear that *Hall* does not set out a constitutional standard applicable

to all situations.[3] We must, therefore, evaluate the instruction given in light of the specific circumstances of this case and the most recent decisions of the Supreme Court, this circuit, and other circuits.

## III.

■ When the altercation occurred, Justice had already been arrested and bail had been set. He was, therefore, a pretrial detainee. *See Bell v. Wolfish,* 441 U.S. 520, 523, 99 S.Ct. 1861, 1865–66, 60 L.Ed.2d 447 (1979) (pretrial detainees are persons charged with a crime but not yet convicted of that crime). The source of constitutional protection against the use of excessive force on a pretrial detainee is the detainee's liberty interest in bodily security, grounded in the fifth and fourteenth amendments.[4] *Kidd,* 774 F.2d at 1258–60; *see also Ficacco v. City of Rensselaer,* 783 F.2d 319, 321–22 (2d Cir.1986) (excessive force after arrest but before reaching police station covered by fifth and fourteenth amendments).

■ Decisions dealing with the fourth amendment right of arrestees and the eighth amendment right of convicted persons to be free from excessive force or cruel and unusual punishment are nonetheless relevant to this case. The fundamental inquiry in all excessive force cases, regardless of the protected interest's fourth, fifth, or eighth amendment origins, is whether the degree of force was necessary to protect a legitimate state interest, and therefore permissible under all the circumstances. *See Kidd,* 774 F.2d at 1260–61. While force sufficient for a state tort claim does not necessarily rise to a constitutionally violative level, *see Daniels v.*

3. The dissent asserts that our decision today "effectively overrules" *Hall* and similar cases. In fact, we do not maintain that *Hall* was erroneously decided. Rather, we hold that the descriptive language in *Hall* is too case-specific to use as a universal, standard setting jury instruction. This conclusion is compelled by this court's reasoning in our most recent relevant decision, *Kidd,* 774 F.2d at 1261 & n. 15.

4. At oral argument, appellant's counsel maintained that Justice fell within the fourth amend-

ment's protection against unreasonable seizures. The fourth amendment is the source of protection when an individual is subject to excessive force during an arrest. *See Jenkins v. Averett,* 424 F.2d 1228, 1231–32 (4th Cir.1970). Because the altercation occurred after Justice had been seized and there is no indication that Justice was attempting to escape, we believe his protected interest falls more appropriately within the purview of the fifth, not the fourth, amendment.

*Williams,* —— U.S. ——, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), at some point the force is so disproportionate to the circumstances that it is constitutionally tortious. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (balancing of all the circumstances required to resolve fourth amendment excessive intrusion cases); *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985) (although convicted prisoner's misconduct merited some disciplinary response, means used were so disproportionate under the circumstances as to violate the prisoner's eighth amendment rights). Factors relevant to assessing disproportionality include, but are not limited to, the need for the force, the degree of force applied, the injuries inflicted, and totality of the circumstances surrounding the use of the force. *Cf. King v. Blankenship,* 636 F.2d 70, 73 (4th Cir.1980) (quoting factors listed in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

## IV.

■ The instruction given in this case must be evaluated in light of this multifactor, totality of the circumstances standard. A judge's desire to focus the jury's inquiry through the use of descriptive adjectives is understandable. Nevertheless, the instruction challenged in this case is unacceptable because it is inaccurate and internally inconsistent. The instruction improperly suggests a series of requirements for liability and erroneously implies that Dennis must be exonerated unless he acted maliciously or sadistically.

The first specific flaw in the instruction is its formulation of the "shocks the conscience" test of *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). *Rochin*'s language commonly is employed in excessive force cases, *see, e.g., Whitley v. Albers,* —— U.S. ——, ——,

106 S.Ct. 1078, 1086–88, 89 L.Ed.2d 251 (1986); *Fernandez v. Leonard,* 784 F.2d 1209, 1216 (1st Cir. Mar. 6, 1986), although its clarity in setting an ascertainable guide for a jury may be questioned. *Cf. Smith v. Wade,* 461 U.S. 30, 50–51, 103 S.Ct. 1625, 1637–38, 75 L.Ed.2d 632 (1983) (suggesting vagueness challenge to instruction imposing section 1983 liability if, inter alia, the conduct "shock[s] the sensibilities"). If a "shocks the conscience" instruction is given, it must be faithful to *Rochin.* The instruction given in this case is not.

The jury was instructed to assess whether the conduct was "so brutal, demeaning and harmful as literally to shock the conscience of a court." To the extent that this instruction invites a jury to infer how a judge would react, the flaw is obvious.[5] Furthermore, *Rochin,* 342 U.S. at 170–72, 72 S.Ct. at 208–10, makes clear that the "conscience" at issue is that of the community in light of evolving societal norms, not that of any particular judge or court. Finally, by focusing on words such as "brutal," "demeaning," and "literally shocking," without explaining that these descriptives are one end of a spectrum intended to be juxtaposed with conduct that merely "offend[s] some fastidious squeamishness or private sentimentalism about combatting crime too energetically," *id.* at 172, 72 S.Ct. at 209, the instruction suggests an overly high threshold for Dennis' liability.

The second problem with the instruction is that the following passage appears to set out three requirements for liability, not merely three factors meriting consideration when balancing all the circumstances.

You must determine whether the force applied caused injury so severe, was so disproportionate to the need presented and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal or inhumane abuse of official power literally shocking to the conscience.

5. In the next sentence, the jury was instructed that the force had to be "literally shocking to the conscience," not shocking to the conscience "of a court." It is impossible to ascertain, therefore, whether the jurors thought they were to employ their personal norms, their view of a judge's norms, or their view of general, societal norms of "shocking" behavior.

At least one circuit has adopted a checklist of requirements, all of which must be met in order to hold a law enforcement officer liable. *See Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985). We have avoided that position, however, in favor of a multi-factor approach in which all the circumstances are considered. *See Kidd*, 774 F.2d at 1261. In order to be consistent with *Kidd*'s case-by-case, fact-oriented approach, the trial court must impress upon the jury that the factors it lists are merely issues worth considering. They are not all-inclusive requirements for liability.[6]

The third and most difficult problem with the instruction is its incorporation of *Hall*'s inquiry into whether the force "was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal or inhumane abuse of official power literally shocking to the conscience." *Hall*, 621 F.2d at 613. This language was based, *see id.*, on the following passage in *Johnson v. Glick*, 481 F.2d at 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), a seminal case recognizing a prisoner's due process right to be free from excessive force.

> In determining whether the constitutional line has been crossed, a court must look to such factors as ... whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

To the extent that the instruction implies that malice or sadism is a requirement for imposing liability on Dennis, it misstates the law of this circuit. In *Ladnier v. Murray*, 769 F.2d 195, 199 n. 4 (4th Cir.1985), this court interpreted *Johnson* to mean that "proof of malice will elevate the common law causes of action to constitutional torts, but is not required to prove a constitutional tort." *Cf. Kidd*, 774 F.2d at 1261 & n. 15. In *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir.1970), we held that recklessness, wantonness, or gross and culpable negligence may be sufficient for a section 1983 excessive force claim. Proof of bad motive, evil intent, or "ulterior purpose" is not required. *Id.* at 1232–33.

■ Two other circuits share our view that malice is not required for an excessive force claim based on the fifth and fourteenth amendments. *See Fernandez*, At 1216; *Fiacco*, At 321. *But cf. Hendrix v. Matlock*, 782 F.2d 1273, 1275 (5th Cir. Feb. 18, 1986) (retaining malice requirement for fourth and fourteenth amendment claim of excessive force on an arrestee). Twice, the Supreme Court has refused to discuss whether "something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process clause." *Daniels*, 106 S.Ct. at 667 n. 3; *see Whitley*, —— U.S. at ——, 106 S.Ct. at 1084–86. In the absence of a Supreme Court ruling that gross negligence or reckless conduct cannot violate the fourteenth amendment,[7] we adhere to our precedent that in some circumstanc-

---

**6.** The interpretation of these considerations as relevant factors, not an inclusive list of requirements, is consistent with *Johnson v. Glick*, 481 F.2d at 1033, a frequently cited case in this area. *See, e.g., Whitley*, —— U.S. at ——, 106 S.Ct. at 1084–86 (quoting *Johnson*); *King*, 636 F.2d at 73 (quoting *Johnson*). In *Johnson*, Judge Friendly introduced a list of concerns similar to those in the instruction by stating, "In determining whether the constitutional line has been crossed, a court must look to *such factors as* ...." *Johnson*, 481 F.2d at 1033 (emphasis added).

**7.** In *Daniels*, 106 S.Ct. 662, the Court held that simple negligence is insufficient for section 1983 recovery for a prisoner's deprivation of

life, liberty, or property in violation of the fourteenth amendment. *See also Davidson v. Cannon*, —— U.S. ——, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). In *Whitley*, —— U.S. at ——, 106 S.Ct. at 1084–86, the Supreme Court held that "a reliable inference of wantonness," which is "tantamount to a knowing willingness" is required to submit an eighth or fourteenth amendment claim of excessive force in quelling a prison riot to a jury. The Court deliberately "implied nothing" about whether "recklessness" or "gross negligence," both of which are less intentional than "wanton" conduct, would be sufficient to permit recovery by pretrial detainees under the due process clause of the fourteenth amendment. *Id.* at ——, 106 S.Ct. at 1088–90.

es, a law enforcement officer may be liable to a pretrial detainee for not only malicious, but also reckless, wanton, or grossly negligent conduct.

To the extent that the instruction sets out a spectrum with malice and sadism on one end and simple negligence on the other, it is misleading because it does not indicate at which point the constitutional line is crossed. Although some jurists maintain that the proper definition of "malice" is recklessness or wantonness, *see, e.g., Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (debating proper definition of malice for punitive damages in section 1983 case), this jury was instructed that malicious action must be accompanied by "ill-will, spite, or grudge." Sadism was not defined. Consequently, even under a generous construction, the instruction sets out a spectrum in which intentional conduct is contrasted with simple negligence. The instruction does not suggest that conduct short of intentional wrongdoing, such as wantonness, recklessness, or gross negligence, is sufficient for the imposition of liability. In fact, a fair interpretation is that intentional wrongdoing is required. As we have discussed above, such an interpretation overstates the burden on Justice.

### V.

■ The challenged instruction was one of several instructions, some of which acceptably stated the law governing constitutional claims of excessive force.[8] The fact that more accurate instructions were given does not solve the problem with this case, however. Although a jury charge must be considered as a whole, if instructions conflict and one is prejudicial, the charge is fatally flawed. *United States v. Walker,* 677 F.2d 1014, 1016 n. 3 (4th Cir. 1982). Furthermore, if a charge "compels

or even invites reasonable jurors to accept an unconstitutional view of the law," the error is not harmless. *Cooper v. State of North Carolina,* 702 F.2d 481, 483 (4th Cir.1983). We are convinced that the standard-setting instruction given in this case was so important and so flawed that a new trial must be granted.

Our grant of a new trial implies nothing about the ultimate merit of Justice's claim. In some situations, the use of physical force or even mace to subdue an individual may be constitutional. *See Bailey v. Turner,* 736 F.2d 963 (4th Cir.1984) (use of mace). In other circumstances, such responses are excessive. It is the jury's prerogative to resolve the conflicts in the testimony of Justice, Dennis, and Rose, to decide what degree of force actually was used, and to assess whether that force was constitutionally excessive. In making those assessments, however, the jury must be guided by a clear, accurate, and even-handed statement of the constitutional standard. Because the standard-setting instruction given by the trial court was not accurate and even-handed, the judgment for Dennis is hereby reversed, and this case is remanded for a new trial.

REVERSED AND REMANDED

K.K. HALL, Circuit Judge, dissenting:

I must express my frank amazement at the result reached by the majority which today discovers reversible error in a jury instruction that faithfully follows the express language of binding authority in this Circuit. I find the majority's action both procedurally and legally defective.

The portion of the jury instruction quoted on page 4, *supra,* is, as the majority concedes, virtually a verbatim quote from this Court's opinion in *Hall v. Tawney.*[1]

---

8. For example, at one point, the trial court told the jury that the force must be assessed "in light of all of the surrounding circumstances." After giving the challenged instruction in which requirements for recovery arguably are set out, the court repeated *Johnson's* language that these concerns are no more than factors to consider in determining whether a constitutional violation has occurred.

1. *Hall* admittedly dealt with corporal punishment in public schools rather than with a claim of police brutality. The Court conducted, however, a thorough inquiry into the nature of substantive due process in excessive force claims and articulated the formulation used by the district court in this instance. The language in *Hall* was also cited as controlling authority in

The *Hall* language was reaffirmed as embodying this Circuit's rule on excessive force in *Bailey v. Turner*. Although questioned in part, an instruction containing the same language that is at issue here was treated as valid in *Ladnier v. Murray*.

The majority lightly disregards these decisions with a conclusory observation that "verbatim repetition of the language of a previous decision does not guarantee that a jury instruction properly states the standard...." Unless we intend to require clairvoyance by trial judges, I fail to see how else a district court in this Circuit is to determine the law except by reliance on this Court's clearly expressed opinions.[2] The majority's decision effectively overrules *Hall*, *King* and *Turner* and, thereby appropriates unto itself the power properly exercised only by this Court sitting *en banc*. In my view, a panel may not, in the guise of distinguishing existing authority, distinguish it out of existence.

Although I believe that the majority's assault on the doctrine of *stare decisis* is sufficient alone to render its decision fatally defective, I also disagree with its conclusion that the "shocking to the conscience" language sets an unconstitutionally high threshold for section 1983 liability. The use of force against a resisting pretrial detainee is subject to privilege and entitled to the judicial deference due the decisions of individuals charged with maintaining control of detention facilities. *Bell v. Wolfish, supra*. If federal courts are to avoid improperly turning state tort law into a source of section 1983 liability, *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), then juries must be given clear guidance on the higher level of misconduct necessary to raise a constitutional claim. Whether the *Hall* formula-

tion at issue here stated the actual constitutional standard or simply described the level of state conduct necessary to violate the standard as suggested in *Kidd, supra*, makes little practical difference. Under either analysis, the jury in this instance was properly informed that section 1983 liability requires behavior more egregious than that normally needed to sustain a state tort claim. I see no error in that instruction.

In a misguided effort to establish what it designates as a "clear, accurate and even-handed statement of the constitutional standard" the majority tramples upon unequivocal precedent in this Circuit. The result is not only a doubtful statement of the law, but also a severe and demoralizing impediment to the orderly operation of the district courts. I respectfully and emphatically dissent.

---

*King v. Blankenship*, which clearly was an excessive force case.

**2.** A verbal formulation utilized in a single appellate decision may not automatically be appropriate as a jury instruction. However, when that language has been repeatedly cited as the embodiment of the essential inquiry in cases of that type, it strains credulity to suddenly discover that it is improper to offer it as guidance

to a jury. Certainly, the majority has cited no authority in which a trial court's instruction to a jury which conforms to the decisions of the controlling appellate court have been held to be reversible error. At most, *Kent v. Smith, supra*, establishes the trial judge's authority to refuse a proposed instruction even though it may follow language in a prior case.