Donald CENTEIO, Plaintiff,

v.

**HARLEY–DAVIDSON MOTOR COMPANY, INC., Defendant.**

Civ. A. No. 80–1715–G.

United States District Court, D. Massachusetts.

April 16, 1987.

Mark S. Knoll, Thomas E. Cargill, Jr., Kerry Paul Choi, Cargill, Masterman & Culbert, Boston, Mass., for plaintiff.

John J. Cogavin, John Carroll, Parker, Coulter, Daley & White, Robert Curley, Jr., Curley & Curley, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GARRITY, District Judge.

The plaintiff, Donald Centeio, was severely injured in August 1977 when the motorcycle he was riding, an XL model made and sold by the defendant, went off Route 58 in Carver, Massachusetts, and into some trees, causing him to be thrown from the vehicle. Plaintiff subsequently filed suit alleging that the accident was caused by a defective kickstand spring, whose malfunction had distracted him just as he was entering a bend in the road. He seeks damages on theories of negligent design and breach of warranty. After factual discovery came to a close, defendant filed a motion for summary judgment, on which the parties filed careful briefs and the court heard oral argument. The court granted the motion on the breach of war-

ranty count insofar as plaintiff's dismantling of the vehicle after the accident, and delay in filing suit, prejudiced the defendant. Mass.Gen.Laws Ann. c. 106, § 2–318 (West Supp.1986). It took under advisement the other question, as to negligence, presented by the motion. After receiving additional briefs and considering the matter further, the court herein grants summary judgment on the negligence count of plaintiff's complaint as well.

The basic facts are not in sharp dispute. As he was entering a gradual left-hand turn in the road, travelling at a speed of about 40 miles per hour, plaintiff leaned the motorcycle to the left and apparently heard a scraping noise. This occurred at approximately 500 to 600 feet from the site of the accident. Plaintiff then looked down past his left leg and saw that his kickstand was not in its normal upright position. He attempted to knock the kickstand back up several, apparently three, times with his foot, but failed. In the course of those attempts the plaintiff's attention was diverted from the road. As a result, he found himself heading off the pavement onto the shoulder and eventually into a telephone pole, or some trees, leading to his injuries.

Several additional facts have been conceded for purposes of the instant motion; primarily, the genuineness of plaintiff's fear that the kickstand's down-position would limit his ability to turn the motorcycle to his left.[1] In reality, examination of the kickstand and roadtests have shown that it could not have come in contact with the ground as plaintiff began his turn. Also, as even plaintiff's expert admits, the dropping of a kickstand does not reduce the turning capacity of a motorcycle like the one driven by plaintiff. Thus, the question presented on defendant's motion may be phrased as follows: whether defendant should be subject to liability for injuries arising from a genuine yet mistaken perception of danger by plaintiff.

In the absence of apposite precedent to the contrary, the court regards such liability as simply too expansive and burdensome to a manufacturer of motorcycles—or of other products, since countless consumer goods could give rise to injury as a result of good-faith misperception of risk. Though often put in terms of events which break a causal chain, or events which cannot be foreseen, the issue more realistically centers on the proper scope of defendant's duty to consumers: i.e., not whether defendant *could* imagine an accident arising out of misperception—for it certainly could—but whether it *should* have to anticipate one and be held accountable for it. See F. Harper, F. James and O. Gray, 4 *The Law of Torts*, § 20.5 at 149–50 (2d ed. 1986); W. Prosser, *Law of Torts*, § 44 at 270, 274 (4th ed. 1971); cf. *Venezia v. Miller Brewing Co.*, 1 Cir.1980, 626 F.2d 188, 191. The question is not susceptible to simple or mechanical analysis, 4 *The Law of Torts, supra*, at 167. As one set of authorities has observed, "[n]otions about what should be foreseen ... are very much interwoven with our feelings about fair and just limits to legal responsibility...." *Id.* at 137. Despite the ambiguities, we have no choice but to draw a line somewhere around legal responsibility.

The liability proposed by plaintiff would extend too far chiefly because his injuries could have occurred only through his misperception of danger, and that was a force completely out of defendant's control. It is difficult to imagine how a manufacturer could properly plan for, and take steps to mitigate, all the types of misperceptions that consumers might experience. People can perceive dangers from different things or at different times, and then respond quite differently. To account for them would require much less uniform, much more expensive products—and even then the possibility of guarding against misperception is doubtful.[2]

---

1. The parties have also agreed, on this motion, that the kickstand in question was made by defendant, but this would have been subject to dispute had a trial of the case gone forward.

2. Plaintiff's expert has stated in deposition that the average rider would perceive a danger if a kickstand fell during operation of a motorcycle. Yet he also conceded that there is no body of scientific evidence as to how, and whether, a

Some accidents arising out of misperceptions might be compensable but only in connection with certain products or components. The chief criterion should be whether the defendant had an independent reason for applying a particular degree of care to its production and design. Tires or brakes on a motorcycle may be a good illustration. In regard to these items, the defendant would have every reason to take strict precautions because the parts are central to safe operation of the vehicle. Misperception or not, a rider would be gravely at risk if they failed to work properly, and the defendant would have to protect against accident. To hold a defendant liable for misperception related to these parts of a vehicle would not so markedly change or expand the sorts of risks for which the defendant had to plan.

A kickstand is very different, however, because the danger from misperception would go far beyond the component's chief purpose, to support the motorcycle while standing at rest. Defendant, quite understandably, would design the product to serve in that capacity; so that if it later failed to support the motorcycle, causing harm to vehicle or rider or both, there would be no question as to liability. Planning for misperceptions during operation is an entirely different matter.

Plaintiff has raised several objections to this line of analysis. First, he claims that the case should not be decided as a matter of law by the court, but liability should instead hinge on the reasonableness of his misperception, and subsequent conduct, as compared to the conduct of defendant—questions for the jury. The court is mindful of the plaintiff's right to submit his case to a jury where proper. But we are equally aware of the court's obligation to draw legal boundaries around the jury's role. In the instant case, reducing the legal issues to one strictly of reasonableness would overlook the prior issue of the compass of risks for which the defendant can fairly be compelled to plan and be responsible. Even if plaintiff's misperception of limited turning capacity and, therefore, of danger was reasonable, it was the sort of conduct too far out of defendant's control, and too unpredictable, for defendant to be held liable.[3]

Next, plaintiff points to several cases in which courts have held that "hasty or violent" action by a plaintiff did not bar recovery when a "peril seemed imminent...." *Gannon v. New York, New Haven and Hartford R. Co.*, 1899, 173 Mass. 40, 41–42, 52 N.E. 1075; *see Slate v. Hogback Mountain Ski Lift, Inc.*, 1960, 122 Vt. 8, 163 A.2d 851, 854–55; *Southwestern Freight Lines v. Floyd*, 1941, 58 Ariz. 249, 119 P.2d 120, 124. Plaintiff is correct that these cases turn on the reasonableness of plaintiff's conduct—not on the issue of legal duty—and that reasonableness depends on all the circumstances, including the appearance of an emergency, but they are distinguishable in an important respect.

rider would perceive certain situations as threatening. The lack of such evidence would bear not only on his ability to testify as an expert on psychological factors but also on the fairness of holding defendant responsible for plaintiff's misperception. It is arguably unfair to hold a manufacturer liable for something which he can neither control nor gauge with any measure of confidence.

3. Plaintiff contends that in reality, as a result of tests it conducted, defendant was on notice of the problem of kickstand malfunction and of its possible effect on the operators of its motorcycles, so that it cannot complain of being unable to anticipate an accident like plaintiff's. In part, the argument is irrelevant, because it does not explain how the defendant could have protected against misperception-caused accidents other than designing a perfect product, a standard to which the law does not hold manufacturers. *Cf. Back v. Wickes Corp.*, 1978, 375 Mass. 633, 640–41, 378 N.E.2d 964. Second, assuming the test is admissible as nonhearsay, going to the issue of notice, or as a "record of regularly conducted activity", Fed.R.Evid. 803(6), the test actually indicates that in XL models, the model driven by plaintiff, a falling kickstand did not present a problem during operation. Finally, the court is very hesitant to penalize defendant, in effect, for a report that indicated commendable attention to its products' safety. To be sure, once on notice of a problem, defendant should act to correct it. Conversely, however, once informed that no problem exists, defendant should not be penalized for having been sufficiently concerned to order a test in the first place.

In those cases, unlike the present one, the defendants were principally responsible for creating the appearance of danger by their specific actions, in the presence of plaintiff. In *Gannon, supra,* 173 Mass. at 41, 52 N.E. 1075, for example, a fire aboard a train was fanned instead of extinguished by an errant brakeman, causing a passenger's apprehension of danger. In *Southwestern Freight Lines, supra,* the court noted that "[t]he situation the plaintiffs found themselves in was ... created by the ... defendants. It was their concurring acts that gave rise to the emergency plaintiffs were in." *See Slate, supra,* 163 A.2d at 853. Defendant's conduct in this case, though contributing to the situation, was not critical in the same way. Plaintiff's difficulties began when he was directed to a scraping noise, which, as noted, could not have been caused by a dragging kickstand, and it worsened while he wrestled with the kickstand over the next several hundred yards instead of just pulling over to the side of the road. Clearly, an emergency was not created by the dropping of the kickstand. Nor was the appearance of an emergency created by an event for which defendant was responsible. The apparent state of emergency was created essentially by plaintiff's own misperception and subsequent response and defendant should not be subject to liability for them. *See Robinson v. Butler,* 1948, 226 Minn. 491, 33 N.W.2d 821, 822.

Finally, plaintiff suggests that, due to inherent hazards of operating a motorcycle, *any* malfunction giving rise to a misperception of danger should at least present a question for the jury as to liability. The basic flaws in this argument, as noted *ante,* are (a) the impossibility of designing products to take full account of all the misperceptions, and resulting responses, to which users are subject, and (b) the unfairness of grossly expanding liability for components unconnected to the safe operation or use of a product. To the extent motorcycles are especially dangerous and involve unique risks, the court is not persuaded that all extra risks involved should fall on the defendant. Plaintiff, as well, has a duty to adjust his perceptions and response to the situation. Plaintiff may be suggesting that given the ultra hazardousness of motorcycles, defendant should have warned him about the non-hazard of a falling kickstand, but this argument has not been made explicitly, nor is it very convincing. *Cf. doCanto v. Ametek, Inc.,* 1975, 367 Mass. 776, 781–82, 328 N.E.2d 873. It would be as impractical to warn of every conceivable non-hazard that might affect a consumer as it would be to guard against every imaginable misperception.

For the reasons stated *ante,* and at the hearing on March 23, 1987, the court grants defendant's motion for summary judgment of dismissal on Counts I and II of plaintiff's complaint.