Faye Elizabeth HALL, as next friend and mother of Naomi Faye Hall, a minor, and Faye Elizabeth Hall and Bervin E. Hall in their own rights, on behalf of themselves and all others similarly situated, Appellants,

v.

G. Garrison TAWNEY, Individually; Bernard Claywell, Individually; John Kingery, former Superintendent of Schools for Roane County, in his individual capacity; Myles Spencer, Jo Ann Moore, Melvin Smith, Cecil Taylor, and Harry Taylor, Members of the Board of Education of Roane County, in their individual capacities; and Lonnie Canterbury, Superintendent of Schools for Roane County, in his individual capacity, Appellees.

No. 78–1553.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1979.

Decided May 9, 1980.

Daniel F. Hedges, Charleston, W. Va., for appellant.

Richard E. Rowe, Charleston, W. Va. (Joseph R. Goodwin, Goodwin & Goodwin, Charleston, W. Va., on brief), Monty Preiser, Charleston, W. Va. (Stanley E. Preiser, Frederick D. Fahrenz, Preiser & Wilson Legal Corp., Charleston, W. Va., on brief), for appellees.

Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Plaintiffs—Naomi Faye Hall, a minor, and her parents, Faye Elizabeth Hall and Bervin E. Hall—appeal the dismissal of their action brought under 42 U.S.C. § 1983 against various officials and employees of the school system of West Virginia, for alleged violation of their constitutional rights by the infliction of disciplinary corporal punishment upon Naomi, a student in

the system. We affirm in part, reverse and remand in part.

## I

The action arose from an incident occurring on December 6, 1974 in which Naomi, then a student at Left Hand Grade School in West Virginia, was paddled by a teacher in that school. In four counts, the complaint alleged resulting violations of Naomi's constitutional rights as secured by the Fourteenth Amendment to procedural and substantive due process, to be free of cruel and unusual punishment, and to equal protection of the laws; and of the parents' substantive due process rights. Joined as defendants in respect of each of these constitutional counts were G. Garrison Tawney, the teacher who administered the paddling; Bernard Claywell, principal of the school, who authorized part of the paddling; John Kingery, former superintendent of the county school system; Lonnie Canterbury, superintendent at the time; and County Board of Education members, Myles Spencer, Jo Ann Moore, Melvin Smith, Cecil Taylor, and Harry Taylor.[1]

On defendants' joint motion under Fed.R. Civ.P. 12(b)(1) and (6), the district court dismissed the entire action, essentially upon the authority of *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), decided after commencement of the action. On this appeal, conceding that *Ingraham* has effectively foreclosed their procedural due process and cruel and unusual punishment claims,[2] plaintiffs press only

---

1. A fifth count alleged a state law assault and battery tort claim against Tawney alone. See Part V, *infra.*

2. Recognizing the existence of a substantive liberty interest in school children sufficient to invoke Fourteenth Amendment procedural due process requirements, the *Ingraham* Court found these adequately provided by (Florida) state law tort and criminal remedies for excessive applications of corporal punishment by school officials. *Ingraham* at 672–82, 97 S.Ct. at 1413–18. The constitutional prohibition against cruel and unusual punishment was found inapplicable to school children because

limited to persons convicted of crime. *Id.* at 659–71, 97 S.Ct. at 1406–12.

In the instant case, the district court found *Ingraham* dispositive of the procedural due process claim because West Virginia law—as had been expressly noted in *Ingraham*—afforded essentially the same common law civil and criminal remedies as did Florida law in *Ingraham*. Though the absence of specific West Virginia decisions directly applying the civil and criminal sanctions was conceded, the district court observed that it had "no reason to believe that the common law criminal and civil remedies are not still in effect." Appellants

the substantive due process claims of Naomi and of the parents respectively.[3] We take these in reverse order.

## II

Plaintiffs argue that Naomi's paddling violated the right of her parents to determine the means by which Naomi could be disciplined. They had told school officials, including Tawney, that they did not want Naomi corporally punished.

This issue was decided adversely to plaintiff's claim in *Baker v. Owen*, 395 F.Supp. 294 (M.D.N.C.) (three judge court), *aff'd*, 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). There the plaintiff parents had told officials that they did not want their child spanked. Despite this he was given two licks with a drawer divider slightly thicker than a ruler. The court agreed that the parental rights involved came within the protection of the Constitution, but held that they were overborne by the countervailing interest of the state:

> [O]pinion on the merits of the rod is far from unanimous. On such a controversial issue, where we would be acting more from personal preference than from constitutional command, we cannot allow the wishes of a parent to restrict school officials' discretion in deciding the methods to be used in accomplishing the not just legitimate, but essential purpose of maintaining discipline.

*Id.* at 301.

Plaintiffs question the precedential value of the Supreme Court's summary affirmance of *Baker*. The Court itself, however, has left little doubt as to the significance it attributes to its disposition of the case. In *Ingraham* it cites its summary affirmance of *Baker* as holding "that parental approval of corporal punishment is not constitutionally required." *Ingraham*, 430 U.S. at 662 n.22, 97 S.Ct. at 1408 n.22.

■ Even without the imprimatur of the Supreme Court, however, we would be inclined to accept the reasoning of *Baker*.

The state interest in maintaining order in the schools limits the rights of particular parents unilaterally to except their children from the regime to which other children are subject. The very cases upon which plaintiffs rely recognize that the "concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972).

■ Here plaintiffs allege that the corporal punishment inflicted was not "reasonable," but "severe." *See Baker*, 395 F.Supp. at 301. We do not believe, however, that any constitutional right of parents to choose the means by which their child should be disciplined can be made to turn on the severity of the punishment. The reasons advanced in *Baker* for finding no parental constitutional rights implicated apply alike to all degrees of punishment.

■ We therefore conclude that the parents' claim was rightly dismissed.

## III

In *Ingraham*, the Supreme Court denied review to the question, "Is the infliction of severe corporal punishment upon public school students arbitrary, capricious and unrelated to achieving any legitimate educational purpose and therefore violative of the Due Process Clause of the Fourteenth Amendment?" *Id.* at 659 n.12, 97 S.Ct. at 1406 n.12. Therefore, the Court said, "[w]e have no occasion in this case . . . to decide whether or under what circumstances corporal punishment of a public school child may give rise to an independent federal cause of action to vindicate substantive rights under the Due Process Clause." *Id.* at 679, n.47, 97 S.Ct. at 1416 n.47.

■ The Supreme Court's denial of review to the substantive due process issue in *Ingraham* presents an initial awkwardness

---

apparently accept this view of extant state law, as do we.

**3.** Appellants have not raised the equal protection claim on this appeal, and it is therefore not before us.

to decision here that must frankly be recognized at the outset of our discussion. Without resolution of that issue, *Ingraham* of course stands directly only for the propositions that school paddlings of the kind there and here in issue violated neither procedural due process nor Eighth Amendment rights. But from the direct holding that these two rights were not violated it might be possible to imply a holding that neither could there have been violation of any substantive due process right.[4] That this implication is not compelled, however, seems manifest to us from the fact and form of the Court's express reservation of the issue. Indeed, from this reservation the opposite implication seems compelled: that substantive due process rights *might* be implicated in school disciplinary punishments even though procedural due process is afforded by adequate state civil and criminal remedies, and though cruel and unusual punishment is not implicated at all.[5] That question, unresolved and reserved in *Ingraham* is squarely presented for decision on this appeal. For reasons that follow we conclude that there may be circumstances under which specific corporal punishment administered by state school officials gives rise to an independent federal cause of action to vindicate substantive due process rights under 42 U.S.C. § 1983. We further conclude that whether those circumstances existed in the instant case could not properly be determined as to the defendants directly involved in the paddling on the motion to dismiss under Fed.R.Civ.P. 12(b)(6) and that the case must therefore be remanded for further proceedings in respect of Naomi's substantive due process claim. Despite the dangers of expounding constitutional doctrine on the basis of bare-bones pleadings,[6] we find it necessary in ordering remand here to give shape to the substantive due process right we recognize.

■ We start with the proposition that disciplinary corporal punishment does not *per se* violate the public school child's substantive due process rights. This is of course implicit in *Ingraham*'s holding that

---

**4.** In dissent, Mr. Justice White suggested that if this were not necessarily implicit in the Court's decision, its "opinion is merely a lengthy word of advice with respect to the drafting of civil complaints." *Ingraham* at 689, 97 S.Ct. at 1422, n.5 (dissenting opinion). Despite the logic of this point, and the anomaly suggested for the *Ingraham* claimants by an interpretation that they may have had valid, unreviewed substantive due process though not Eighth Amendment claims, we conclude that this is the proper reading of *Ingraham*'s scope. This reading simply recognizes the anomaly for what we think it is—an explicable procedural consequence of the Supreme Court's rightful exercise of its powers of selective review. We think the substantive implication that would remove the anomaly not necessary, nor warranted by precedent. *See* note 5, *infra*.

**5.** Eighth Amendment rights were found not implicated in *Ingraham* solely because of the status of the claimants (not persons convicted of crime) and not because of the content of the particular conduct charged as violation of those rights. Therefore, though it is clear that the rights to bodily security protected by the Eighth Amendment and by substantive due process respectively are substantially congruent so far as content is concerned, *see, e. g., Johnson v. Glick*, 481 F.2d 1028, 1032–33 (2d Cir. 1973), a holding that conduct alleged by *A* to violate his Eighth Amendment rights does not do so because *A* has no Eighth Amendment

rights obviously does not decide that the conduct may not violate his congruent substantive due process rights. Consequently there is no anomaly in finding *A*'s substantive due process though not any Eighth Amendment rights violated by particular conduct.

Similarly, a holding that the procedural due process afforded by a state incident to its intrusions upon a "liberty" interest protected by the Fourteenth Amendment is constitutionally adequate for that purpose is obviously not a holding that the qualitatively different "liberty" interest protected by substantive due process, *see Poe v. Ullman*, 367 U.S. 497, 543, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting) may not be violated by the challenged conduct. That the liberty interest found adequately protected by state procedures in *Ingraham* may derive to some extent from the same general sources as the ultimate interests in bodily security protected by substantive due process, *see Ingraham*, 430 U.S. at 673–74, 97 S.Ct. at 1413–14 (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)) does not mean that the two interests cannot co-exist in the same person in respect of the same official conduct.

**6.** *See, Estelle v. Gamble*, 429 U.S. 97, 110–13 & n.7, 97 S.Ct. 285, 294–95 & n.7, 50 L.Ed.2d 251 (1976) (dissenting opinion).

the protectible liberty interest there recognized admits of some corporal punishment, which in turn is based upon a recognition that corporal punishment as such is reasonably related to a legitimate state interest in maintaining order in the schools—the critical inquiry in substantive due process analysis. Appellants here concede this much, but contend that the constitutional right is violated at the point where a specific punishment exceeds in severity that reasonably related to the interest.

The Fifth Circuit addressed this construction when it decided *Ingraham*, and held that federal constitutional right could not be made to turn upon relative levels of severity of specific, perhaps unauthorized, incidents of corporal punishment:

> Having determined that corporal punishment itself and corporal punishment as circumscribed by the guidelines [of the school board] . . . is not arbitrary, capricious, or unrelated to legitimate educational goals, we refused to look at each individual instance of punishment to determine if it has been administered arbitrarily or capriciously. We think it a misuse of our judicial power to determine, for example, whether a teacher has acted arbitrarily in paddling a particular child for certain behavior or whether in a particular instance of misconduct five licks would have been a more appropriate punishment then ten licks. We note again the possibility of a civil or criminal action in state court against a teacher who has excessively punished a child.

*Ingraham v. Wright,* 525 F.2d 909, 917 (5th Cir. 1976) (en banc); (footnote omitted) *aff'd on other grounds,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Judge Godbold, dissenting, disagreed with the implication that the episodic nature of corporal punishment abuses removed them from the realm of constitutional protection afforded by substantive due process. Specifically he rejected the majority's view that

> it would be an abuse of our judicial power to determine whether punishment inflicted in a particular case exceeds constitu-

tional limits. This is a mere rule of convenience, made palatable by characterizing the issue as the difference between five and ten licks. I doubt that the majority really means what it says, and I suspect that if in a future case the punishment inflicted has broken the victim's leg we will face the issue and hold that substantive due process has been violated.

*Id.* at 920–21 (dissenting opinion).

Judge Rives, dissenting, disagreed with the majority's view that because adequate state remedies for excessive punishments existed, no cognizable federal claim under § 1983 existed:

> Clearly, the teachers and administrators who administered the spankings in this case did so under color of state law. The fact that they might have misused the power vested in them by the state to administer corporal punishment by inflicting more blows and blows more severe than prescribed does not alter the basic fact that these beatings were performed by officials clothed with state authority.

*Id.* at 925–26 (dissenting opinion).

 We agree with Judges Godbold and Rives, and observe that nothing they said in *Ingraham* was disturbed by the Supreme Court decision in review of that case. It is of course settled that relief under § 1983 does not depend upon the unavailability of state remedies, but is supplementary to them. *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961). Federal and state rights may of course exist in parallel, and federal courts may not avoid the obligation to define and vindicate the federal constitutional right merely because of a coincidence of related rights and remedies in the federal and state systems. Attendant doctrinal difficulties and implications for docket burdens have simply to be accepted.

 We turn therefore to definition of the constitutionally protected substantive due process right we consider to exist here in addition to the substantive right and remedies provided by state law. First off,

the substantive content is quite different than that defining state civil and criminal remedies. Mindful that not every state law tort becomes a federally cognizable "constitutional tort" under § 1983 simply because it is committed by a state official, *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 443 (1979); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), we do not find the substance of this right in the parallel right defined by state assault and battery law. Instead, we find it grounded in those constitutional rights given protection under the rubric of substantive due process in such cases as *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (forcible use of stomach pump by police); *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970) ("reckless" pistol shooting of suspect by police); and *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) (unprovoked beating of pretrial detainee by guard): the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court. The existence of this right to ultimate bodily security—the most fundamental aspect of personal privacy—is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process. Numerous cases in a variety of contexts recognize it as a last line of defense against those literally outrageous abuses of official power whose very variety makes formulation of a more precise standard impossible.[7] Clearly recognized in persons charged with or suspected of crime and in the custody of police officers, we simply do not see how we can fail also to recognize it in public school children under the disciplinary control of public school teachers. Difficult as may be application of the resulting rule of constitutional law in the public school disciplinary context, it would seem

no more difficult than in related realms already well established. In any event it is a difficulty that may not be avoided in the face of allegations or proof sufficient to raise the possibility that such an intolerable abuse of official power—no matter how aberrant and episodic—has occurred through disciplinary corporal punishment.

In the context of disciplinary corporal punishment in the public schools, we emphasize once more that the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, decision may well turn on whether "ten licks rather than five" were excessive, *see Ingraham v. Wright*, 525 F.2d at 917, so that line-drawing this refined may be required. But substantive due process is concerned with violations of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern these distinctions imply. As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.). Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may.

### IV

In ruling on the defendant's motion to dismiss, the district court considered Naomi's substantive due process claim only to the point of concluding, in reliance upon the Fifth Circuit's decision in *Ingraham* and

---

7. *E. g., Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979) (incarcerations); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamations); *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (bodily assaults); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) (same); *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970) (same).

the Supreme Court's denial of review on the issue, that because corporal punishment *per se* did not violate substantive due process no cognizable claim was stated under 42 U.S.C. § 1983. It did not analyze the allegations of the complaint to determine whether a cognizable claim based on the specific incident alleged might have been stated, presumably again relying on the Fifth Circuit's view in *Ingraham* that where state law provides adequate substantive remedies, merely episodic punishments that might violate state law do not give rise to a federal cause of action under § 1983. As our opinion indicates, we disagree with that conclusion and have held instead that a cognizable claim based upon an episodic application of force not authorized by state law or policy may be stated under the substantive due process standard here recognized.

▉ When we look to the complaint we cannot say that under that substantive standard it fails to state a claim for relief against Tawney and Claywell, the direct participants in the December 6 paddling incident. Of course, upon full development of a summary judgment or trial record, it may appear that the actual facts of the incident do not support a claim of substantive due process violation. But we cannot say from the bare pleading allegations that "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Though admittedly employing conclusory allegations in describing the incident, the complaint in pertinent part stated that Tawney "without apparent provocation" struck the minor plaintiff "with a homemade paddle, made of hard thick rubber and about five inches in width . . .

across her left hip and thigh"; that in an ensuing struggle with the plaintiff he "violently shoved the minor plaintiff against a large stationary desk"; that he then "vehemently grasped and twisted the plaintiff's right arm and pushed her into" the presence of the defendant Claywell who then granted permission to Tawney to "again paddle the minor plaintiff"; that "the minor plaintiff was again stricken repeatedly and violently by the defendant Tawney with the rubber paddle, under the supervision and approval of defendant Claywell"; that as a result of this application of force "the minor plaintiff was taken that afternoon to the emergency room of [a nearby hospital] where she was admitted and kept for a period of ten (10) days for the treatment of traumatic injury to the soft tissue of the left hip and thigh, trauma to the skin and soft tissue of the left thigh, and trauma to the soft tissue with ecchyniosis of the left buttock"; that for the injuries inflicted the minor plaintiff was "receiving the treatment of specialists for possible permanent injuries to her lower back and spine and has suffered and will continue to suffer severe pain and discomfort, etc." There were also allegations respecting Tawney's demonstrated attitude toward Naomi and other student members of her family from which malicious motivation might be inferred if the events alleged were proven as fact.

As we have indicated, when exposed to the searching light of full discovery and other pre-trial procedures or eventually, if need be, to the testing of proof on trial, these bare allegations may be exposed as merely that in whole or substantial part, and the actual facts justifying a finding of substantive due process violation simply not present.[8] We hold here only that they suf-

---

**8.** The district court treated its dismissal as one based upon the pleading allegations of the complaint alone, although there were in the record at the time of hearing affidavits and depositions presumably submitted in connection with a pending motion by the plaintiffs for "partial" summary judgment. Were these materials outside the complaint considered under Fed.R. Civ.P. 12(b), they would not justify summary

judgment in respect of the claim here found well stated.

On the limited record before the district court quite substantial factual issues related to the nature of the paddling incident and particularly to the actual severity of any injuries received as a result were presented. Upon remand it would be quite appropriate to reopen the record for discovery and other pre-trial procedures

ficed to state a claim for relief against Tawney and Claywell under 42 U.S.C. § 1983. Accordingly it was error to dismiss the action against these two defendants as to the minor plaintiff's substantive due process claim.

V

 The allegations of the complaint do not suffice to state substantive due process claims under § 1983 against any of the other defendants than Tawney and Claywell. These other defendants were, respectively, the former and current superintendents of the County School system and the members of the County Board of Education, all sued in their individual capacities. While these defendants were alleged in conclusory terms to have condoned a general policy of inflicting excessive corporal punishment on students in the school system, none was alleged specifically to have directed, supervised, participated in, authorized or even to have condoned by knowing acquiescence the specific incident upon which this claim for relief is based. Under the circumstances they would not be liable directly or vicariously, for any constitutional deprivation suffered in the incident. *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977); *see also Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

As indicated, among the claims dismissed in the general dismissal of the entire action was a state tort law claim by the minor plaintiff against Tawney alone. The dismissal was presumably for lack of subject matter jurisdiction of the pendent state claim. With the reinstatement of the minor plaintiff's substantive due process claim pendent jurisdiction over the state claim presents a new question and the claim must be reinstated for possible consideration under the district court's pendent jurisdiction upon remand. We of course express no opinion as to whether the jurisdiction should in any event be exercised. This is committed to the informed discretion of the district court to be exercised in light of

looking to development of the issues presented by the substantive due process claim in light of

developments upon remand. *See generally,* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567.

For the reasons given, the district court's dismissal of the action is affirmed in respect of all the claims alleged except the substantive due process and pendent state tort claims of the minor plaintiff, and in respect of all the defendants except Tawney and Claywell. As to the latter claims and defendants, the judgment of dismissal is reversed and the action remanded for further proceedings consistent with this opinion.

*AFFIRMED IN PART; REVERSED AND REMANDED IN PART.*

this opinion. *See Estelle v. Gamble*, 429 U.S. at 113, 97 S.Ct. at 295 (dissenting opinion).