845 F.2d 325
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jimmy Allen DARDEN, a Minor Under the Age of 18 Years, By
and Through His Parents and Guardians, L.H. DARDEN
and Emoline Darden, as Next Friends of
Jimmy Allen Darden, Plaintiff-Appellant,
v.
Ron WATKINS and Russellville Independent Board of Education,
By and Through Its Superintendent, Jim Young; Joe Hardy,
Chairman of Russellville Board of Education; Jerry White;
Tom Luckett; David Smith; and Janet Menser, Defendants-Appellees.
 No. 87-5331.
 United States Court of Appeals, Sixth Circuit.
 April 28, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Jimmy Allen Darden, a minor, by and through his parents and guardians, L.H. Darden and Emoline Darden, appeals the district court's grant of summary judgment in favor of defendants-appellees Ron Watkins ("Watkins") and the Russellville Independent Board of Education ("the Board" or "the Board of Education"), Russellville, Kentucky, in this action under 42 U.S.C. Sec. 1983, alleging that defendants' use of corporal punishment in the Stevenson Elementary School in Russellville, Kentucky, violated plaintiff's rights under the due process clause of the Fourteenth Amendment. Because we find that the evidence does not present a "genuine issue as to any material fact," see Fed.R.Civ.P. 56(c), we affirm.
 
 I.
 
 2
 Plaintiff filed his complaint on March 22, 1984, alleging that on or about September 30, 1983, Watkins, then a teacher in the Russellville Independent School District's Stevenson Elementary School, administered corporal punishment which was "unreasonable, had excessive force, caused permanent injury, was improperly administered and was utilized in an improper method upon the plaintiff." J.A. at 9. Plaintiff further alleged that the rules and regulations of defendants regarding the application of corporal punishment are "vague, arbitrary and capricious so as to allow a violation of ... plaintiff's constitutional rights." J.A. at 10. According to the complaint, plaintiff received this punishment for failing to place a homework assignment on the desk of his teacher, Watkins, in a timely manner as requested.
 
 
 3
 On April 17, 1984, defendants answered the plaintiff's complaint, essentially denying the pertinent allegations thereof, and the case proceeded to discovery. Thereafter, several depositions were taken including the depositions of plaintiff and Watkins.
 
 
 4
 Watkins testified that he was the plaintiff's fourth grade homeroom teacher at the time of the incident alleged in the complaint, and that he had established in his homeroom various rules regarding the conduct of his students. One of these rules was that students who did not complete homework assignments would receive a paddling. He testified that this rule was written on his classroom's blackboard at the beginning of the school year and explained to students in a way, he felt, they could understand.
 
 
 5
 Evidently, plaintiff had a problem with completing his homework. Watkins testified that on various occasions he had discussed with plaintiff the importance of homework, and further that plaintiff's parents had been contacted about plaintiff's work and general performance in school.
 
 
 6
 On September 30, 1983, plaintiff was in Watkins' class and had not completed his homework. Watkins used a paddle and spanked plaintiff, along with another child who had not completed his work. Both were given one "lick" with a paddle. According to Watkins, plaintiff then "went into orbit ... screaming and disrupting the class." J.A. at 165. As a result, plaintiff was paddled a second time:
 
 
 7
 I got ahold of him and said, now, Jimmy, you need to calm down or I'll have to give you another one. So I gave him one other swat on the bottom and got very close to his face and told him that if he didn't calm down, that he would receive a third lick. At that point, he immediately stopped, sat down in his chair, and he went on--it was about time to change classes.
 
 
 8
 J.A. at 166.
 
 
 9
 Plaintiff, when deposed, testified that he was aware that a failure to complete homework assignments could result in a paddling. He testified, however, that on the day in question he had in fact completed his work but was unable to find it. According to plaintiff, Watkins did not believe him and thus proceeded to administer three "licks" with a paddle:
 
 
 10
 I told him I couldn't find it, and he brought me up there and he bent me over and gave me one lick and I cried and went back to my desk. And he brought me back again and gave me another lick and he hit me so hard he hurt my leg and I limped and bumped my back and I begged him not to hit me anymore, and he hit me again.
 
 
 11
 J.A. at 263.
 
 
 12
 Emoline Darden ("Mrs. Darden"), plaintiff's mother, was also deposed, and she testified that she discovered bruises on plaintiff's buttocks while bathing him. Initially, plaintiff lied to his mother and stated that his bruises were the result of a fall; however, when his mother protested that the marks did not comport with a fall, plaintiff admitted that he had been paddled at school. Later that evening, Mrs. Darden, becoming concerned, took plaintiff to the emergency room at a local hospital. There he was examined by an emergency room physician who observed a three- to four-inch area of reddish-blue discoloration over the fleshy part of plaintiff's left buttock, which the physician noted could have been caused by paddling.
 
 
 13
 On October 22, 1984, plaintiff moved for summary judgment, requesting that the district court enter an order declaring the rules and regulations of the defendant Board of Education inadequate and unconstitutional, and further requesting that the court order the Board to adopt procedures regarding corporal punishment consistent with the Fourteenth Amendment. On the same day, defendants also moved for summary judgment, asserting that the rules and regulations of the Board of Education are constitutionally adequate and that the corporal punishment administered to the plaintiff was reasonable. Defendants asserted that the actions of the Board of Education were consistent with both plaintiff's procedural and substantive due process rights.
 
 
 14
 On January 6, 1986, the district court granted defendants' motion for summary judgment, finding that the actions of Watkins were not in violation of plaintiff's constitutional substantive due process rights and, also, that plaintiff was afforded all the procedural protections to which he was due. After the denial of his motion to reconsider, plaintiff timely appealed.
 
 II.
 A.
 
 15
 Fed.R.Civ.P. 56(c) provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has observed that the standard for determining whether summary judgment is appropriate is the same standard as should be used in considering a motion for directed verdict; i.e., "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2512 (1986).
 
 
 16
 This court is to apply the same test as used by the district court in reviewing a motion for summary judgment. Hand v. Central Transport, Inc., 779 F.2d 8, 10 (6th Cir.1985) (per curiam).
 
 
 17
 [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.
 
 
 18
 Anderson, 477 U.S. at ----, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 B.
 
 19
 Plaintiff argues that the district court erred in entering summary judgment against him based on his allegation that defendants violated his substantive due process rights by inflicting excessive and unreasonable corporal punishment upon him.[1] The seminal case addressing the substantive due process rights of public school students is Hall v. Tawney, 621 F.2d 607 (4th Cir.1980). In Hall, the Fourth Circuit reversed in part the district court's dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim of an action by a student against schoolteachers who inflicted corporal punishment upon the student. Although the plaintiff abandoned her procedural due process claims, the court found that the plaintiff had stated a cause of action as to her substantive due process rights.
 
 
 20
 The facts of Hall are clearly on a different level and are therefore distinguishable from those which the depositions disclose occurred in the present case. According to the allegations in Hall's complaint, the following occurred:
 
 
 21
 [The defendant] "without apparent provocation" struck the minor plaintiff "with a homemade paddle, made of hard thick rubber and about five inches in width ... across her left hip and thigh"; ... in an ensuing struggle with the plaintiff he "violently shoved the minor plaintiff against a large stationary desk"; ... he then "vehemently grasped and twisted the plaintiff's right arm and pushed her into" the presence of [another defendant] who then granted permission to [the defendant] to "again paddle the minor plaintiff"; ... "the minor plaintiff was again stricken repeatedly and violently by the defendant ... with the rubber paddle, under the supervision and approval of [the other defendant]"; ... as a result of this application of force "the minor plaintiff was taken that afternoon to the emergency room of [a nearby hospital] where she was admitted and kept for a period of ten (10) days for the treatment of traumatic injury to the soft tissue of the left hip and thigh, trauma to the skin and soft tissue of the left thigh, and trauma to the soft tissue with ecchyniosis of the left buttock"; and for the injuries inflicted the minor plaintiff was "receiving the treatment of specialists for possible permanent injuries to her lower back and spine and has suffered and will continue to suffer severe pain and discomfort, etc."
 
 
 22
 Hall, 621 F.2d at 614.
 
 
 23
 The court in Hall observed that while the Supreme Court had yet to address whether substantive due process rights were implicated in a school discipline context, the clear implication of the Supreme Court's grant of substantive due process rights to criminal suspects, see Rochin v. California, 342 U.S. 165 (1952), is that school children under the disciplinary control of public schoolteachers are similarly entitled to substantive due process protections. Id. at 613. However, the court in Hall was careful to note that the magnitude of corporal punishment inflicted, in order to rise to the level of a constitutional claim, must be extremely severe.
 
 
 24
 As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may.
 
 
 25
 Hall, 621 F.2d at 613 (citation omitted, emphasis supplied).
 
 
 26
 The court in Hall also stressed the distinction between the level of force required to make out a Fourteenth Amendment substantive due process claim, and that generally thought necessary to establish a state tort of assault and battery. The court explained:
 
 
 27
 In the context of disciplinary corporal punishment in the public schools, we emphasize once more that the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, [the] decision may well turn on whether "ten licks rather than five" were excessive, so that line-drawing this refined may be required. But substantive due process is concerned with violations of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern these distinctions imply.
 
 
 28
 Id. (citation omitted).
 
 
 29
 The test enunciated by Hall for public school corporal punishment cases was adopted by this circuit in Webb v. McCullough, 828 F.2d 1151 (6th Cir.1987). There we concluded that "brutal and inhumane abuse of ... official power, literally shocking to the conscience," violates a student's substantive due process rights. Id. at 1159. Similarly, in Wilson v. Beebe, 770 F.2d 578, 582 (6th Cir.1985) (en banc) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973)), we noted:
 
 
 30
 In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.
 
 
 31
 See also Garcia v. Miera, 817 F.2d 650, 655 (10th Cir.1987), cert. denied, --- S.Ct. ---- (March 21, 1988) (adopting Hall where a nine year old third grade student was held upside down by her ankles and hit several times with a split board on the front of her legs until they bled).
 
 
 32
 In Webb, we reversed the district court's grant of summary judgment in favor of defendants on plaintiff's substantive due process claim. The plaintiff in that case had joined a high school band trip to Hawaii for a competition. Apparently, the plaintiff and other females in her hotel room were accused of having alcohol and males in their room. The school principal (McCullough), acting as chaperone on the trip, went to the room to investigate these accusations. When he arrived, the plaintiff locked herself in the hotel bathroom, and the court described plaintiff's version of the ensuing facts as follows:
 
 
 33
 He [McCullough] tried to jimmy the bathroom door lock but Webb would not let him in. He then slammed the door three of four times with his shoulder. The door finally gave way, knocking Webb against the wall. McCullough then thrust the door open again, and it struck Webb again, throwing her to the floor. He then grabbed Webb from the floor, threw her against the wall, and slapped her. She then broke away and ran to her roommates.
 
 
 34
 Webb, 828 F.2d at 1154.
 
 
 35
 We found summary judgment inappropriate in that factual context, as we observed that a trier of fact could find that under the circumstances "McCullough's need to strike [the plaintiff] was so minimal ... that the alleged blows were a brutal and inhumane abuse of [his] official power...." Id. at 1159. We held that three facts were especially important in reaching this conclusion. First, we noted that there was no indication in the record that the alleged blows were disciplinary in nature or had any other legitimate purpose. Second, we observed that in the context of a school trip, McCullough stood in loco parentis to the plaintiff and therefore had a heightened responsibility for the plaintiff's well being. Third, we found it significant that the "alleged blows were not struck in the school context, where the need for immediate disciplinary control ... is at its greatest...." Id. at 1159.
 
 
 36
 We recognize that when the analysis focuses, as it does in the present case, on the level of force applied, the amount of harm inflicted, and the justifications for the application of force, some degree of line drawing is required. See Gumz v. Morrissette, 772 F.2d 1395, 1400 (7th Cir.1985) (citing Hall, 621 F.2d 607) ("The determination of whether [the Fourteenth Amendment substantive due process right to be free from excessive governmental intrusions] has been violated requires a certain amount of line-drawing, and must be resolved on a case-by-case basis."), cert. denied, 475 U.S. 1123 (1986). Nonetheless, in our view, the events of the present case are easily distinguishable from both Hall and Webb by comparison to the level of force which the pleadings and other evidence indicate was inflicted upon plaintiff.
 
 
 37
 The facts reveal that plaintiff was not treated as brutally as were the plaintiffs in Hall and Webb. Moreover, here, unlike in Webb, defendant Watkins was working in a school context with a legitimate purpose for administering the paddlings.[2] Even though Watkins' action in paddling the plaintiff may very well have been unwise, there is no evidence in the present case to suggest that his action was "inspired by malice or sadism." Hall, 621 F.2d at 613.
 
 
 38
 As indicated, however, we by no means intend to sanction Watkins' conduct in the present case. Further, we are fully understanding of the parents' concern with the events that occurred here. However, we do not feel that the force applied to the plaintiff rises to the level of brutality required under Hall and Webb. Thus, we hold that the district court properly granted defendants' motion for summary judgment on this issue.
 
 C.
 
 39
 Another component of plaintiff's complaint is that his procedural due process rights under the Fourteenth Amendment were violated. The district court likewise granted summary judgment on this claim, noting that under Ky.Rev.Stat. Sec. 158.148,[3] the Russellville Independent Board of Education is required to adopt disciplinary guidelines. The district court found that these guidelines, together with civil remedies under state law available for excessive corporal punishment, see Carr v. Wright, 423 S.W.2d 521 (Ky.1968), satisfy any procedural due process required by the Fourteenth Amendment.
 
 
 40
 In Ingraham v. Wright, 430 U.S. 651 (1977), the Supreme Court discussed the procedural due process rights of students in public school corporal punishment cases, observing: "It is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law." Id. at 674. However, in turning to the question of "what process is due," the Court found very little to be required in the way of procedural due process beyond the postpunishment civil remedies and criminal sanctions which may be returned against public schoolteachers who abuse their position. Id. at 675-82. Indeed, the Court held the need to establish procedural safeguards (viz., notice and a hearing) is not strong because of "the common law privilege permitting teachers, to inflict reasonable corporal punishment on children in their care, and the availability of the traditional remedies for abuse...." Id. at 674.
 
 
 41
 Ingraham involved the punishment of a Florida student, and the Court based its conclusion that traditional common law remedies satisfied procedural due process on the fact that Florida provided both civil remedies for unreasonably excessive corporal punishment and criminal penalties for abuse of the privilege of corporal punishment. The Court thus specifically rejected the plaintiff's argument that a prior hearing was required before any paddling could occur.
 
 
 42
 We conclude that the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools, as that practice is authorized and limited by the common law.
 
 
 43
 Id. at 682.
 
 
 44
 In our view, application of Ingraham to the present case leads inescapably to the conclusion that plaintiff has failed to raise a genuine issue of material fact on his claim of violation of procedural due process. The Commonwealth of Kentucky does provide civil remedies for the imposition of excessive corporal punishment in a public school context. In Carr, 423 S.W.2d at 521, cited in Ingraham, 430 U.S. at 663 n. 28, the court held that a schoolteacher inflicting punishment "in excess of what reasonably appear[s] to be appropriate under the circumstances," may be subject to liability under the common law tort of assault and battery. Id. at 522-23. The court stated that "[w]hile teachers are clothed with a discretionary authority with respect to the infliction of corporal punishment ... the punishment must be reasonable and confined within the bounds of moderation; that is, must not be cruel or excessive, and the teacher must not act wantonly or from malice or passion...." Id. at 522 (quoting 47 Am.Jur. Schools Sec. 175). Additionally, criminal liability may attach to malicious corporal punishment exceeding reasonable bounds. See Ky.Rev.Stat. Sec. 508.010 et seq.[4]
 
 
 45
 Also, although no prior hearing was afforded in the present case, the testimony is virtually undisputed that defendant Watkins had a clearly established policy of paddling students who did not turn in their homework assignments. He stated in his deposition that he had put students on fair notice at the beginning of the school year that paddlings would result from a failure to turn in homework. It further appears from the plaintiff's own deposition that he was aware of Watkins' rule of paddling for failure to turn in homework assignments. He was asked whether he knew what would happen if he failed to do his work, and he stated he did and, further, that he understood at the time he was told about this rule. J.A. at 258-61. Thus, in our view, procedural due process was satisfied in the present case.
 
 D.
 
 46
 Plaintiff also raises on appeal a relatively novel procedural issue. On October 4, 1985, plaintiff's counsel filed a motion to withdraw, which was eventually granted on January 9, 1986. On that same day, the district court granted plaintiff thirty days to secure new counsel, denied plaintiff's motion for summary judgment and entered summary judgment in favor of defendants. Plaintiff contends that the district court erred in entering summary judgment when it did because doing so had the effect of prohibiting new counsel (which filed an entry of appearance later) from representing him on the cross-motions for summary judgment.
 
 
 47
 Plaintiff cites in support of his argument Dickinson County Savings Bank v. Crescent Beach Lodge and Resort, Inc., 249 N.W.2d 617 (Iowa 1977); however, we find his reliance on this case is misplaced. In Dickinson County, the plaintiff filed a motion for summary judgment which was set by Judge Edward Kennedy to be heard on September 16, 1974. In the meanwhile, Judge Joseph Hand granted defendant's counsel's motion to withdraw and granted defendant thirty days from August 30, 1974, to secure new counsel. Judge Kennedy, however, nonetheless held a hearing on the summary judgment motion on September 16, 1974, with only plaintiff's counsel appearing and with the result that defendant was not represented at all at the summary judgment hearing. The Supreme Court of Iowa reversed, holding that defendant should have been granted an opportunity to oppose plaintiff's motion for summary judgment through new counsel.
 
 
 48
 In the present case, however, plaintiff was represented by counsel throughout the summary judgment process, although by prior counsel. Plaintiff's new counsel did file a motion to reconsider the grant of summary judgment in favor of defendant, raising again the issues in the earlier motions, but the district court denied the motion to reconsider. J.A. at 72. Thus, this case is clearly distinguishable from Dickinson County.
 
 
 49
 However, even if we were to assume, arguendo, that the district court erred in entering summary judgment without allowing new counsel an opportunity to appear, we are convinced that no prejudice occurred here. Plaintiff has failed to indicate what, if any, new evidence or new arguments were sought to be produced through new counsel.[5] Moreover, our independent analysis of the record reveals that the pertinent facts central to a determination of the issues raised in the motions for summary judgment before the district court were adequately developed by plaintiff's prior counsel. We are therefore unwilling to give plaintiff an opportunity merely to rehash evidence and arguments already competently presented to the district court and ruled on by the court.
 
 III.
 
 50
 For the reasons stated, the district court's grant of summary judgment in favor of defendants is AFFIRMED.
 
 
 
 [1]
 Plaintiff maintains as an initial matter that the district court erred in even reaching plaintiff's substantive due process claim as neither plaintiff nor defendants' motions for summary judgment raised the substantive due process issue. Plaintiff, however, has simply overlooked the fact that defendants' motion does assert that defendants complied with all procedural and substantive protections due the plaintiff. J.A. at 28; see also J.A. at 40-48
 
 
 [2]
 It bears repeating that whether two or three "licks" were administered is not dispositive, as the substantive due process protection guaranteed plaintiff under the Fourteenth Amendment is implicated only at a level of force and harm severe enough to involve a brutal and inhumane abuse of official power. The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems [of liability for injuries] may already be administered by the States." Daniels v. Williams, 106 S.Ct. 662, 666 (1986) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976))
 
 
 [3]
 This statute, which became effective on July 13, 1984 (the incident involved in the present case occurred in September of 1980), provides that the Kentucky Department of Education is to develop statewide student disciplinary guidelines and recommendations. Ky.Rev.Stat. Sec. 158.148(1)
 
 
 [4]
 Although a Kentucky statute does provide a justification exception from criminal liability for schoolteachers using physical force, the statute only applies in limited instances; for example, when the defendant teacher believes force is necessary to maintain discipline in school. Ky.Rev.Stat. Sec. 503.110(1)(a)
 
 
 [5]
 Plaintiff's counsel did file a motion to amend plaintiff's complaint, but the motion was denied by the district court