**Ann RYDER, Plaintiff,**

**v.**

**Franklin FREEMAN, in his official capacity as Secretary of the North Carolina Department of Correction, Defendant.**

**No. 1:95cv67.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 22, 1996.

Charles R. Brewer, Asheville, NC, for plaintiff.

James Peeler Smith, Michelle Bradshaw, N.C. Department of Justice, Valerie L. Bateman, N.C. Department of Justice, Assistant Attorney General, Raleigh, NC, W. Dale Talbert, Neil Dalton, Isaac T. Avery, III, Robert T. Hargett, Asst. Atty. General, NC Dept. of Justice, Raleigh, NC, for defendant.

## MEMORANDUM OF DECISION

THORNBURG, District Judge.

**THIS MATTER** is before the court upon defendant's Motion to Dismiss this matter under Rules 12(b)(1), 12(b)(2), and 12(b)(6), Federal Rules of Civil Procedure. Inasmuch as plaintiff concedes that she seeks only prospective injunctive relief, the court will decline decision on defendant's Rule 12(b)(1) and Rule 12(b)(2) motions and proceed imme-

diately to defendant's contention that plaintiff has failed to state either a substantive or procedural due process violation.

## I. Background

Plaintiff is an employee of the North Carolina Department of Correction who serves as a uniformed prison guard in a state prison facility located in Buncombe County. As part of her training, the state requires that she undergo "mace training," which involves being sprayed in the face with pepper mace. Plaintiff contends, and defendant does not dispute, that her employment as a uniformed prison guard will be terminated if she fails to undergo the challenged mace training.

Plaintiff claims that this component of her training violates her rights to both procedural and substantive due process under the fourteenth amendment to the United States Constitution. As to procedural due process, she contends that the required training will deprive her of liberty, which she defines as freedom from bodily harm. Also claiming that the policy violates substantive due process, plaintiff contends that mace training "shocks the conscience" and is "arbitrary and capricious." In her brief, she explains that "in generally alleging a violation of substantive due process [she] has implicated her right to privacy and bodily integrity and security." Plaintiff's brief, at 12.[1]

## II. Motion to Dismiss for Failure to State a Claim: Rule 12(b)(6)

### A. Standard

■■■ Defendant has moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that plaintiff has failed to state a cognizable claim. Rule 12(b) authorizes dismissal based on a dispositive

---

**1.** The relevant allegation in plaintiff's complaint is set out in full, as follows:

Requiring the plaintiff to submit to such a procedure violates the rights of the plaintiff secured for her by the Fourteenth Amendment to the United States Constitution in that she is being deprived of her liberty, to wit: freedom from bodily harm, without due process of law. The conduct of the Department of Correction represented by this policy shocks the conscience, is arbitrary and capricious, and is violative of the Plaintiff's substantive due pro-

cess rights. Requiring Plaintiff's employment to be conditioned on such an unconstitutional practice makes her governmental job contingent on the sacrifice of her constitutional rights, and this is *prima facie* invalid.

Complaint, at paragraph 12. Plaintiff also alleges that the pepper spray training is "dangerous" and "extremely painful." Complaint, at 17. For the limited purpose of the pending Motion to Dismiss, the court has accepted as true plaintiff's contentions as to potential pain and danger.

issue of law. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Court discussed in *Neitzke:*

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory.... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id.,* 490 U.S. at 326–27, 109 S.Ct. at 1832 (citation omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to her.

## B. The Fourteenth Amendment

Plaintiff seeks prospective injunctive relief which would require the State of North Carolina to forego exposure to pepper mace as a part of its mandatory course of training for uniformed prison guards. She seeks such injunctive relief by contending that the policy mandating exposure to pepper mace violates the Due Process Clause of the fourteenth amendment to the United States Constitution. Section 1 of the fourteenth amendment provides:

> [P]ersons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law;

nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, Section 1.

■■ "Procedural due process" and "substantive due process" are distinct. The former guarantees citizens a fair decision-making process before life, liberty, or property is taken, but provides no protection from arbitrary laws, rules, or policies which are at the heart of the proceeding. The latter concerns whether the substantive law under which a citizen's life, liberty, or property is impaired is in harmony with the United States Constitution. *See* Nowak & Rotunda, *Constitutional Law,* Section 10.6(a), at 346 (5th ed. 1995). In this case, plaintiff attacks both the procedure used to implement the policy and the constitutionality of the policy which requires her to submit to mace training or relinquish her position as a uniformed prison guard. The court will now consider, *seriatim,* whether plaintiff has stated a claim for infringement of her right to procedural due process and substantive due process.

## C. Procedural Due Process

In *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a professor at a state university who was hired for a fixed term of one academic year was informed that he would not be rehired for the next academic year. He was given "no reason for the decision and no opportunity to challenge it at any sort of hearing." *Id.,* at 568, 92 S.Ct. at 2704. Not unlike the present case, Roth brought an action in federal district court challenging "the decision both in substance and procedure." *Id.* The Supreme Court rejected Roth's procedural due process claim that he had a liberty interest at stake and held, as follows:

> "Liberty" and "property" are broad and majestic terms. They are among the "[g]reat [constitutional] concepts ... purposely left to gather meaning from experience...." Yet, while the Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries. For the words "liberty" and "property" in the Due Process Clause of

the Fourteenth Amendment must be given some meaning.

*Id.,* at 571–72, 92 S.Ct. at 2706. The Court found that mere termination of employment, without some additional state action, does not implicate a public employee's liberty interests under the fourteenth amendment. Further, the Court noted that liberty had not been defined "with exactness," but would include freedom from bodily restraint, the right to contract, to engage in the common occupations of life, to acquire useful knowledge, to marry, to make a home and rear children, to worship, and enjoy privileges essential to the orderly pursuit of happiness.

 Plaintiff does not and cannot allege that she is being compelled to submit to the challenged training. The only way she will ever have to undergo that training is if she voluntarily consents to exposure as a condition of completing her training as a uniformed prison guard; thus, the only possible deprivation would be her continued employment in that position, and the court has assumed that she would not be retained as a uniformed guard if she failed to submit to the required training. In the procedural due process analysis, the court's focus is not on the underlying policy—here, pepper mace training—but whether a fair decision-making process is used by state actors before depriving a plaintiff of a protected interest. As did the plaintiff in *Board of Regents of State Colleges v. Roth, supra,* the plaintiff in this case has failed to allege anything more than termination of employment (here, as a uniformed prison guard). There are no allegations that the termination is coupled with a prohibition on seeking other employment within state government or even within the Department of Correction or that the termination will reflect anything other than a decision on plaintiff's part not to complete a portion of training which the state considered essential, but which plaintiff found to be intolerable. Stated in constitutional terms, there are no allegations that the termination would in any way impair plaintiff's ability to enjoy any "privileges essential to the orderly pursuit of happiness." Inasmuch as the state

has made no charges against plaintiff "that might seriously damage [her] standing and associations in [her] community," *id.,* at 573, 92 S.Ct. at 2707, plaintiff has failed to state a claim upon which relief could be granted under the procedural Due Process Clause of the fourteenth amendment.

### D. Substantive Due Process

#### 1. Introduction

 In addition to enjoying the right to procedural due process, citizens also enjoy a right to substantive due process. In its simplest terms, that fourteenth-amendment right guarantees citizens the freedom from being subjected to state or local laws, rules, or policies which are contrary to the rights afforded them under the United States Constitution. Substantive due process analysis of such laws may take one of two tracks— "strict scrutiny" or "rational basis." A state law, rule, or policy will receive strict scrutiny by a court where it touches upon a fundamental right; where no fundamental right is touched upon, only a "rational basis" need be shown for the law, rule, or policy to pass constitutional muster.

#### 2. Strict Scrutiny

##### a. Introduction

 A state law, rule, or policy will receive strict scrutiny where it places a burden on a citizen's fundamental rights or a protected class of individuals.[2] The fundamental rights of citizens have been identified as

(1) freedom of association;

(2) the right to vote and participate in the electoral process;

(3) interstate travel;

(4) fundamental fairness in the criminal process;

(5) fairness in procedures concerning individual claims against state deprivations of life, liberty, or property; and

(6) the right to privacy (including freedom of choice in matters relating to an individual's personal life, such as marital

---

2. There is no allegation in this case that the policy at issue is targeted to keep a protected class, such as women, from becoming uniformed prison guards.

decisions, childbearing, and child rearing.)

When fundamental rights or suspect classification are not at issue, courts review claimed violations of substantive due process under the "rational basis" standard of scrutiny. *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Kersh v. Bounds,* 501 F.2d 585, 588 (4th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975). In this case, plaintiff attempts to invoke the higher standard of strict scrutiny by asserting that the defendant's policy "shocks the conscience" and "is arbitrary and capricious."[3] Plaintiff's measured use of those terms raises two standards under substantive due process jurisprudence, neither of which is applicable to the circumstances of this case.

### b. Shocks the Conscience

■■■■ A "shocks-the-conscience" standard finds its origins in a line of cases which holds that individuals in state custody or control have a right to be free from state-sanctioned, nonconsensual, bodily harm which "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952); *Weller v. Department of Social Servs.,* 901 F.2d 387 (4th Cir.1990).[4] That standard has been used to protect an individual's "right to be free of stale intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court." *Hall v. Tawney,* 621 F.2d 607, 612 (4th Cir.1980). The "shocks-the-conscience" standard has been used exclusively to support claims by inmates, not uniformed prison guards, and plaintiff may not invoke that standard, for she, unlike the inmates she supervises, still has the freedom to choose not to be subjected to the challenged policy regarding pepper mace training. To illustrate the point, a "shocks-the-conscience standard" would come into play if the Department of Correction required inmates to submit to doses of pepper mace so they could learn how it would feel to be sprayed by a guard. Unlike a policy directed at inmates who have lost the freedom to choose, the questioned policy is directed at correctional officers, including plaintiff, who are free to relinquish their employment as prison guards rather than submit to the required training. While a person may choose to undergo any number of ordeals in order to retain public employment (*i.e.,* a volunteer soldier submitting to combat training, a Secret Service agent volunteering to sacrifice his or her life to protect the life of a public official, a police officer being trained in the use of painful holds, or a firefighter voluntarily being exposed to life-threatening conditions), it is the freedom of choice which prevents such public sector training or work policies from shocking the conscience. *Board of Regents of State Colleges v. Roth, supra,* 408 U.S. at 575, 92 S.Ct. at 2708. ("[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he ... remains as free as before to seek another [job]"). Public employees have no right to continued public employment and may be required to comply with an employer's rules, regardless of the employee's belief that the employer's actions are unconstitutional. *See Gardner v. Broderick,* 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968).

■■■ The Court of Appeals for the Fourth Circuit has found that even where a policy may cause an employee to terminate his or her public employment as a result of exercising constitutional rights, the policy "does not directly and substantially interfere" with the right so as to be constitutionally invalid. *Waters v. Gaston Co.,* 57 F.3d 422, 426 (4th Cir.1995). Plaintiff's argument that she may not be forced to relinquish her constitutional right to be free from pain in order to maintain her employment with defendant does not state a claim. If such were the case, there would be no police officers, firefighters, or prison guards, all of whom routinely are re-

---

**3.** Complaint, at paragraph 12.

**4.** *See also Temkin v. Frederick County Comm'rs,* 945 F.2d 716 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992), wherein the Court of Appeals for the Fourth Circuit applied the shocks-the-conscience standard to a substantive due process claim brought by an innocent third party injured as a result of a police chase.

quired to submit to training and work which involves the endurance of pain. Individuals who voluntarily seek public employment as law enforcement officers, firefighters, prison guards, and soldiers implicitly consent to the endurance of pain during training: it comes with the territory. Plaintiff is not being required to be a correctional officer and endure the pain; rather, she is consenting to it voluntarily by retaining her employment.

As is suggested by the appellate court in *Rucker v. Hartford Co.*, 946 F.2d 278 (4th Cir.1991), *cert. denied*, 502 U.S. 1097, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992), and in *Temkin v. Frederick County Comm'rs*, *supra*, the fourteenth amendment may offer some "residual" protections in situations where an individual is not within the custody or under the control of the state. Under such residual protections of substantive due process, a court is only required to determine whether the

> [s]tate action is so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any predeprivation procedural protections or of adequate rectification by any postdeprivation state remedies.

*Rucker v. Hartford Co., supra*, at 281. Even assuming all the facts pleaded by plaintiff are true, it is beyond possibility that the policy at issue here is so "arbitrary and irrational" and "unjustified by any circumstance or governmental interest" as to be incapable of avoidance either through a predeprivation or postdeprivation remedy. Where physical injury is the basis of a claim, the state actor's conduct "must amount to a brutal and inhumane abuse of official power literally shocking to the conscience." *Temkin v. Frederick County Comm'rs, supra*, at 720. Plaintiff has not alleged "brutal and inhumane abuse of official power," only that the training is "dangerous," "extremely painful," and a "deliberate infliction of pain and suffering and unwarranted exposure to serious bodily inju-

ry." Complaint, at paragraph 17. These allegations, considered in the context of prison employment, fail to "shock the conscience." Not only has plaintiff's bodily security not yet been invaded by the state through application of pepper spray, but the policy which she alleges will invade her bodily security and therefore infringe upon her liberty interests does not rise to the level of action which "shocks the conscience."

**c. Arbitrary and Capricious**

In alleging that the pepper mace training policy is "arbitrary and capricious," plaintiff attempts to raise a claim under the line of cases holding that individuals have a right to be free from state laws or policies which deprive individuals of rights implicit in the concept of ordered liberty. *Brennan v. Stewart*, 834 F.2d 1248, 1255–56 (5th Cir. 1988). As to this allegation, the question is whether the policy *per se* violates plaintiff's substantive due process rights. Clearly, the policy at issue is "reasonably related to a legitimate state interest." *Hall v. Tawney, supra*, at 612.

On its face, the policy does not violate any constitutional liberty interests. As Lynn Phillips's affidavit [5] details, exposure to pepper spray during training accomplishes several legitimate state interests, including deterring law enforcement officers from using it unless absolutely necessary, teaching them how to react in the event they are inadvertently sprayed or sprayed by an inmate, and making them more sensitive to the need to obtain care for inmates who have been sprayed. In addition, it cannot be shown that the policy is applied in an arbitrary manner, for all uniformed prison guards must comply, except in the case of a legitimate medical reason. Phillips's affidavit.

**d. Conclusion**

Dismissal of a claim of substantive due process is appropriate where a plaintiff "fail[s] to identify the deprivation of any

**5.** While affidavits are seldom appropriate in the context of Rule 12(b)(6), the purpose of Phillips's affidavit is to list the legitimate state interests which are furthered by the policy. Even though plaintiff may contend that such policy also furthers illegitimate state interests—which for purposes of the pending motion the court has assumed plaintiff could show—the state need only show legitimate state interests to pass muster under plaintiff's claim that the policy is arbitrary and capricious.

right implicit in the concept of ordered liberty...." *Dunn v. Town of Emerald Isle*, 722 F.Supp. 1309, 1312 (E.D.N.C.1989), *aff'd*, 918 F.2d 955, 1990 WL 180977 (4th Cir.1990). Although plaintiff, in an attempt to have this court apply strict scrutiny when reviewing the policy, has asserted that the policy is "arbitrary and capricious" and "shocks the conscience," it is clear that the terms used by plaintiff have no application. It further appears that strict scrutiny review is not appropriate and plaintiff's substantive due process claim must be dismissed because plaintiff has failed to identify a fundamental right justifying such scrutiny. *Id.*

### 3. Rational Basis.

Evaluation of the pepper mace training policy under the "rational basis" test makes its clear that the policy "passes muster under a rational basis review." *See Waters v. Gaston Co., supra,* at 426. The *Waters* court found that where the county policy did "not significantly interfere with [a] fundamental right," it was incumbent upon the court to conduct a "facial review [of] the policy to determine whether there was a rational basis for its passage." *Id.* After considering the rational goals of the policy, the *Waters* court stated that it had "no trouble concluding that the policy passes muster under a rational basis review." *Id.* Again, the rational goals of the policy, on its face, are to encourage law enforcement officers to take care when using pepper mace, to discourage the indiscriminate use of pepper mace on inmates, and to teach officers the importance of prompt remediation of the effects of the spray. Far from plaintiff's contentions, this court finds the policy is not only supported by a rational basis, but is a laudable step toward avoidance of unnecessary and prolonged suffering by inmates and prison guards who are exposed to such deterrent.

### III. Conclusion

The court has considered carefully plaintiff's complaint and brief in opposition to the defendant's Motion to Dismiss. Whether or not plaintiff is sincere in her belief that pepper mace training violates protections afforded her under the Due Process Clause of the fourteenth amendment, review of the relevant case law reveals that she has failed to state a claim cognizable in this court. The policy is rationally related to the need of the Department of Correction to ensure that guards understand the impact of pepper mace spray on inmates and themselves and take appropriate steps to avoid its indiscriminate use and remediate its effects. Like most careers in law enforcement, the job of prison guard carries with it no guarantee that the training or work will be without pain or free from some violations of bodily integrity. The fourteenth amendment protects a citizen's freedom to choose, but cannot be read to protect a citizen from making a wrong choice. Under plaintiff's theory, the fourteenth amendment would subject state and locals governments to suit anytime they offered public employment which involved danger, pain, or personal sacrifice. Such a strained reading of the fourteenth amendment would effectively prevent governance. In plaintiff's case, it is up to her, not a federal court, to decide whether the voluntary relinquishment of her right to bodily integrity and freedom from pain is worth continued employment as a uniformed prison guard.

As is reflected in a judgment filed simultaneously herewith, plaintiff has failed to state a claim. Her complaint, therefore, will be dismissed in its entirety.